[No. 45833-7-I.   Division One.   December 26, 2000.]

MERCER PLACE CONDOMINIUM ASSOCIATION, *Appellant*, v. STATE FARM FIRE & CASUALTY COMPANY, *Respondent*.

*John S. Riper* and *Todd C. Hayes* (of *Stanislaw, Ashbaugh, L.L.P.*), for appellant.

*Robert F. Riede* (of *Bullivant, Houser, Bailey*) and *Pamela A. Okano* (of *Reed McClure*), for respondent.

KENNEDY, J. — Mercer Place Condominium Association appeals the trial court's order granting State Farm Fire & Casualty Company's motion for partial summary judgment. Specifically, Mercer Place contests the court's judgment that coverage for loss under its insurance policy was limited to damage involving collapse that occurred during the policy period. Mercer Place argues that coverage also extends to that damage not yet in a state of collapse during the policy period that will eventually reach a point of collapse, unless the condition causing the damage is sooner repaired. Turning to the language of the insurance policy, we agree with the trial court and conclude that coverage extends only to those portions of the property shown to be in a state of collapse during the policy period.

## FACTS

Mercer Place Condominium Association purchased a first party insurance policy for its property, Mercer Place Condominiums, from State Farm Fire & Casualty Company. The policy was effective from September 7, 1996 to September 7, 1997.

Under the policy, State Farm provides coverage for "accidental direct physical loss to property covered under [the] policy[.]" Specifically excluded from coverage under the "Losses Not Insured" section are those losses caused by (1) fungus, mold, decay, deterioration; (2) continuous or repeated seepage or leakage of water that occurs over a period of time; (3) faulty, inadequate, or defective construction and design; and (4) collapse, except as provided in the Extensions of Coverage section. Under the Extensions of Coverage section, State Farm provides coverage for "any accidental direct physical loss to covered property involving collapse of a building or any part of a building[,]" if such

collapse is caused by (among other causes not relevant to this case) hidden decay. In the policy's Conditions section, State Farm covers "loss commencing during the policy period[.]"

In late 1996, Mercer Place discovered structural rot to its wood frame structures. A structural engineer determined that Mercer Place was in a state of progressive structural decay. After Mercer Place notified State Farm of the damage, State Farm conducted investigative tears of the structure to determine which portions were in a collapsed state. State Farm and Mercer Place recognized that coverage would be provided for such damage under the policy's "collapse" provision. Both parties agreed that "collapse" would be interpreted to mean "substantial impairment of structural integrity." In prior claims involving the "collapse" clause, State Farm adopted the same interpretation.

After several rounds of investigative tears, State Farm determined that it had discovered all portions of the building that were in a collapsed state. State Farm paid Mercer Place a total of $255,915.43, which included costs for indemnification, investigative tears, and engineer consulting. Because of the "collapse" claims arising from the investigative tears, State Farm cancelled its policy with Mercer Place on September 22, 1997. Mercer Place objected to the cancellation. Mercer Place filed suit against State Farm on October 15, 1997, alleging breach of the insurance policy.

Mercer Place and State Farm filed cross-motions for summary judgment in which each asked the court to determine the scope of State Farm's liability for "collapse." Mercer Place argued that since the policy covered "loss commencing during the policy period[,]" the policy applied to damage not yet in a collapsed state during the policy period that would eventually reach a point of collapse, given the progressive structural decay. After issuing a letter ruling, the court ruled by summary judgment order on September 9, 1999, that the only loss covered by the policy was "accidental direct physical damage involving collapse

caused by hidden decay, which collapse damage occurred during the policy period." In the letter ruling, the court reasoned that precursors to collapse were not covered under the policy, as "collapse cannot commence before it occurs."

In September 1999, the court conducted a bench trial that was limited to the issues of the extent of "collapse damage" that occurred during the policy period and whether State Farm fulfilled its obligation to investigate Mercer Place's claim fully and fairly. The court determined that State Farm fully and fairly conducted its investigation, that State Farm paid for all collapse loss which occurred during the policy period, and that there was no credible evidence of any collapse loss "which has not been reasonably and adequately investigated and repaired" by State Farm. This appeal followed, in which Mercer Place challenges the summary judgment order but not the determinations made at the bench trial.

## DISCUSSION

Mercer Place argues that the court erred when it ruled on summary judgment that coverage under the policy for collapse was limited to that damage that was shown to be in a state of substantial impairment of structural integrity before the policy expired.

■ Summary judgment is available only if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). In reviewing a summary judgment order, this court conducts the same inquiry as the trial court. *Mountain Park Homeowners Ass'n, Inc. v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). Construction of a contractual insurance policy provision is a question of law and therefore subject to de novo review. *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co.*, 64 Wn. App. 838, 853, 827 P.2d 1024 (1992), *aff'd*, 126 Wn.2d 50, 882 P.2d 703, 891 P.2d 718 (1994) (citing *Grange Ins. Co.*

*v. Brosseau,* 113 Wn.2d 91, 95, 776 P.2d 123 (1989)).

■ If terms in an insurance policy are ambiguous, those terms are construed against the drafter. *McDonald v. State Farm Fire & Cas. Co.,* 119 Wn.2d 724, 733, 837 P.2d 1000 (1992). Washington has not decided the meaning of "collapse" as used in first party insurance policies,[1] and this case does not require us to do so, as Mercer Place and State Farm have agreed that the word "collapse" as used in Mercer Place's policy mean "substantial impairment of structural integrity." The trial court also noted in its Findings of Fact and Conclusions of Law that "collapse" means "substantial impairment of structural integrity" for purposes of this litigation. Because the parties have agreed to the meaning of "collapse," this resolves any ambiguity regarding the provision. "If there be any ambiguity in a contract, the interpretation which the parties have placed upon it is entitled to great, if not controlling, weight in determining its meaning." *Toulouse v. N.Y. Life Ins. Co.,* 40 Wn.2d 538, 541, 245 P.2d 205 (1952) (citing *Thayer v. Brady,* 28 Wn.2d 767, 770, 184 P.2d 50 (1947)).

■ "In construing the language of an insurance policy, the entire contract must be construed together so as to give force and effect to each clause." *Transcon. Ins. Co. v. Pub. Utils. Dists.' Util. Sys.,* 111 Wn.2d 452, 456, 760 P.2d 337 (1988) (citing *Morgan v. Prudential Ins. Co. of Am.,* 86 Wn.2d 432, 434, 545 P.2d 1193 (1976)). "An inclusionary clause in insurance contracts should be liberally construed to provide coverage whenever possible." *Riley v. Viking Ins. Co.,* 46 Wn. App. 828, 829, 733 P.2d 556 (1987) (citing *Pierce v. Aetna Cas. & Sur. Co.,* 29 Wn. App. 32, 627 P.2d 152

---

[1] A growing majority of jurisdictions have assigned the more liberal standard, "substantial impairment of structural integrity," to the use of "collapse" in insurance policies, as opposed to the minority view, which requires that the structure actually fall down. *See generally* Paula B. Tarr, William S. Daskam IV, & Herbert J. Baumann, Jr., *Insurance Coverage For Collapse Claims: Evolving Standards and Legal Theories,* 35 Tort & Ins. L.J. 57 (1999). Judge Barbara Rothstein predicted that the Washington Supreme Court, if called upon to interpret a collapse provision in an insurance policy, would adopt the majority "substantial impairment" standard. *Allstate Ins. Co. v. Forest Lynn Homeowners Ass'n,* 892 F. Supp. 1310, 1314 (W.D. Wash. 1995) (opinion withdrawn by *Allstate Ins. Co. v. Forest Lynn Homeowners Ass'n,* 914 F. Supp. 408 (W.D. Wash. 1996)).

(1981)). "[E]xclusionary clauses are to be construed strictly against the insurer." *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 340, 738 P.2d 251 (1987) (citing *Farmers Ins. Co. v. Clure*, 41 Wn. App. 212, 215, 702 P.2d 1247 (1985)). "Overall, a policy should be given a practical and reasonable interpretation rather than a strained or forced construction that leads to an absurd conclusion, or that renders the policy nonsensical or ineffective." *Transcon. Ins. Co.*, 111 Wn.2d at 457 (citing *Morgan*, 86 Wn.2d at 434-35). However, "a clause or phrase cannot be considered in isolation, but should be considered in context, including the purpose of the provision." *Riordan v. Commercial Travelers Mut. Ins. Co.*, 11 Wn. App. 707, 711, 525 P.2d 804 (1974).

■ Under the policy in this case, State Farm provides coverage for "accidental direct physical loss to property covered under [the] policy[.]" Specifically excluded from coverage under the "Losses Not Insured" section are those losses caused by (1) fungus, mold, decay, deterioration; (2) continuous or repeated seepage or leakage of water that occurs over a period of time; (3) faulty, inadequate, or defective construction and design; and (4) collapse, except as provided in the Extensions of Coverage section. Under the Extensions of Coverage section, State Farm provides coverage for "any accidental direct physical loss to covered property involving collapse of a building or any part of a building[,]" if such collapse is caused by (among other causes not relevant to this case) hidden decay. Thus, interpreting the plain language of this policy, State Farm specifically denies coverage for hidden decay unless that decay has reached a point of collapse, or substantial impairment of structural integrity.

The controversy in this case arises out of the "Policy Period" clause in the Conditions section of the insurance policy, which states that State Farm covers loss "commencing during the policy period[.]" Mercer Place argues that this indicates that once the triggering event, collapse, occurs during the policy period, all losses that flow from such collapse are also covered. That is, because of the

continuous and progressive nature of loss caused by hidden decay, Mercer Place contends that once substantial impairment of structural integrity is found to have occurred during the policy period, those damages that have not reached the point of collapse, but that will inevitably reach that point, should also be covered.

Mercer Place's interpretation is not supported by the language of the policy. While the policy covers loss commencing during the policy period, the loss that is covered is "collapse," i.e., substantial impairment of structural integrity. As the trial court correctly observed in the letter ruling, "collapse cannot commence before it occurs. The structure is either in a 'collapse' condition or it is not." Looking at the policy as a whole, adopting Mercer Place's argument would defeat the purpose of the policy's exclusionary provisions. The policy specifically excludes those losses flowing from such conditions as decay, continuous or repeated seepage or leakage of water, or faulty construction or design, except to the extent that such conditions are found to have created substantial impairment of structural integrity during the policy period.

Mercer Place also relies on a line of continuing damage cases to support its argument that losses not found to be in a state of collapse during the policy period are covered by the policy. In *Gruol Construction Co. v. Insurance Co. of North America*, 11 Wn. App. 632, 524 P.2d 427 (1974), a third party liability insurance case, this court held that three consecutive liability insurers were jointly and severally liable for damage caused by dry rot where the policy provided coverage for "occurrences," which were defined to include conditions causing continuing and worsening injury. In *Villella v. Public Employees Mutual Insurance Co.*, 106 Wn.2d 806, 725 P.2d 957 (1986), the Court held that a loss that occurred after the policy period would not be covered unless it was caused by an insured damage that occurred during the policy period. Similarly, in *Fujii v. State Farm Fire & Casualty Co.*, 71 Wn. App. 248, 857 P.2d 1051 (1993), this court held that coverage did not flow from an

insurance policy in the absence of a covered injury or loss during the policy period. Finally, in *American National Fire Insurance Co. v. B&L Trucking & Construction Co.*, 134 Wn.2d 413, 951 P.2d 250 (1998), the Court held that where the policy provided coverage for damages caused by occurrences (defined to include continuous or repeated exposure to conditions), damages that arose from such occurrences after the policy period were covered under the policy.

Mercer Place thus argues that once the predicate covered damage (here, collapse caused by progressive structural decay) occurs during the policy period, those damages that reach collapse after the policy period are also covered under the policy. The problem with Mercer Place's argument is that under this policy the predicate for coverage is collapse, not the precursors of collapse such as dry rot, water seepage, or design or construction defects leading to such losses. Since the policy specifically excludes coverage for damage from hidden decay that has not yet reached a point of collapse during the policy period, collapse that occurs after the policy period is specifically excluded from coverage. Moreover, unlike the policies at issue in *Gruol* and *B&L Trucking*, which specifically provided for coverage for continuing, progressive damages, there is no such coverage under the State Farm Policy. Instead, the State Farm Policy excludes coverage for "continuous or repeated seepage or leakage of water that occurs over a period of time[.]"

▮▮▮ Despite the fact that the language of the insurance policy itself limits coverage to those damages that reach a point of collapse during the term of the policy, Mercer Place urges this court to prevent State Farm from denying coverage for damages incurred after the policy period. Mercer Place argues that since the known risk doctrine prevents an insured from obtaining coverage for a loss that is known when the insurance is purchased,[2] Mercer Place will not be able to find another carrier to insure its continuing losses—thus it would contravene public policy to

---

[2] *See Hillhaven Props. Ltd. v. Sellen Constr. Co.*, 133 Wn.2d 751, 948 P.2d 796 (1997).

require Mercer Place to bear the expense of repairing the underlying conditions that are causing the progressive decay of its buildings. Mercer Place has cited no authority for this assertion, nor is any known to this court. We are not required to consider arguments not supported by authority. "Where no authorities are cited, the court may assume that counsel, after diligent search, has found none. We therefore do not consider points unsupported by argument or law." *Grant County v. Bohne*, 89 Wn.2d 953, 958, 577 P.2d 138 (1978) (citing *In re Cassel*, 63 Wn.2d 751, 388 P.2d 952 (1964)).

In sum, the State Farm policy here at issue provides only coverage for collapse, i.e., substantial impairment to structural integrity, during the policy period, and does not extend to damage that will, unless the underlying condition causing progressive structural decay is corrected, eventually reach a point of collapse outside the policy period.

Affirmed.

GROSSE and ELLINGTON, JJ., concur.

Review denied at 143 Wn.2d 1023 (2001).