72 P.3d 1086 (2003)
ELLIS COURT APARTMENTS LIMITED PARTNERSHIP, a Washington Limited Partnership, By and Through WOODSIDE CORPORATION, a Washington corporation, its general partner, Respondent,
v.
STATE FARM FIRE AND CASUALTY COMPANY, a foreign insurance company, Appellant.
No. 49644-1-I.
Court of Appeals of Washington, Division 1.
June 12, 2003.
Publication Ordered July 18, 2003.
*1087 Pamela Okano, Timothy Whitters, Seattle, WA, for Appellant.
Kim Stephens, John Zahner, Seattle, WA, for Respondent.
*1088 Todd Christopherson, Seattle, WA, for Amicus.
APPELWICK, J.
A condominium sustained substantial structural impairment as the result of water damage. The owners filed suit when the insurer denied their claim. The trial court rejected the insurer's request that the court use the manifestation trigger rule to determine coverage, and granted the insured summary judgment on the insurer's other defenses to coverage. The insurer appeals. We affirm.

FACTS
Ellis Court Apartments LP (Ellis Court) held annual insurance policies with State Farm Insurance Company for its 58-unit apartment building beginning July 14, 1993, and running through September 1, 1999. Following that period, Ellis Court was insured by Greenwich Insurance Company, not a party to this suit.[1] The State Farm policies covered "loss commencing during the policy period." Although the policy excluded continuous or repeated seepage or leakage and collapse, it covered collapse caused by hidden decay under an extension of coverage for collapse.[2] Covered losses included "accidental direct physical loss to covered property involving collapse" caused by hidden decay.
In early 1993, Ellis Court hired Housing Resources Group (HRG) to manage the building. In 1993, HRG hired a contractor to repair the stucco. Following those repairs, a structural engineer reviewed the repairs and stated that the structural integrity of the building was intact and the useful life of the building should be restored. On March 30, 1999, after inspecting the building, a building consultant notified HRG that "[s]ubstantial impairment and failure of structural and architectural details from water intrusion is occurring." Repairs to Ellis Court, which began in August 2000, have been completed.
Ellis Court submitted a claim in May 2000. State Farm rejected Ellis Court's claim, responding, "The date of loss is the date you were aware of damage from decay such that a claim was or should have been submitted." Ellis Court sued State Farm for a declaration of coverage and recovery from damages. State Farm counterclaimed for a declaration of no coverage. Ellis Court moved for partial summary judgment on the issue of what trigger applies to first-party collapse caused by hidden decay. The trial court granted Ellis Court's motion, finding:
State Farm's Apartment Policy is an "occurrence" policy and loss involving collapse caused by hidden decay is a covered peril when the loss occurs during the policy period, even if the insured discovers the loss after the policy expires.
Ellis Court then moved for a second partial summary judgment on State Farm's other defenses. The trial court granted this motion, finding:
[T]he decay that was the cause of the substantial structural impairment was "hidden," as a matter of law. Accordingly, State Farm's two-year suit limitation affirmative defense is stricken, as well as the known loss defense.
The court also found that as a matter of law, State Farm could not allocate to Ellis Court any portion of the collapse damages. Finally, it found State Farm liable for reasonable attorney fees, expert fees and costs incurred by Ellis Court. The parties thereafter stipulated to damages.
State Farm appeals the first summary judgment order rejecting the manifestation trigger, and the second partial summary judgment order except to the extent it struck State Farm's suit limitation defense.

*1089 ANALYSIS
I. Standard of Review
"[S]ummary judgment may not be granted unless there is no genuine issue as to material facts." Hillhaven Prop., Ltd. v. Sellen Constr. Co., 133 Wash.2d 751, 757, 948 P.2d 796 (1997). "In reviewing a summary judgment order, this court conducts the same inquiry as the trial court." Mercer Place Condo. Ass'n v. State Farm Fire & Cas. Co., 104 Wash.App. 597, 601, 17 P.3d 626 (2000), review denied, 143 Wash.2d 1023, 25 P.3d 1020 (2001). "The Court must consider the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party." Hillhaven, 133 Wash.2d at 757-58, 948 P.2d 796. "Construction of a contractual insurance policy provision is a question of law and therefore subject to de novo review." Mercer Place, 104 Wash.App. at 601, 17 P.3d 626 (citing Queen City Farms, Inc. v. Central Nat'l Ins. Co., 64 Wash.App. 838, 853, 827 P.2d 1024 (1992), aff'd, 126 Wash.2d 50, 882 P.2d 703 (1994).
II. Manifestation Trigger
The manifestation trigger theory "fixes liability for first party property losses solely on the insurer whose policy was in force at the time the progressive damage became appreciable or `manifest.'" Prudential-LMI Ins. v. Superior Court, 51 Cal.3d 674, 694, 274 Cal.Rptr. 387, 798 P.2d 1230 (1990) Thus, it holds that collapse loss "occurs" for the purposes of insurance coverage at the time the insured discovers the damage. State Farm urges the court to adopt this theory. State Farm argues that Ellis Court's policy should be interpreted such that there is no coverage because the collapse manifested itself after Ellis Court's policy expired. Ellis Court contends that the language of the policy precludes the use of a manifestation trigger in this case. Moreover, Ellis Court maintains, Washington State has already adopted the "injury-in-fact" trigger of coverage.
State Farm relies upon a California case, Prudential-LMI Ins. v. Superior Court, 51 Cal.3d 674, 274 Cal.Rptr. 387, 798 P.2d 1230 (1990), to support its policy argument that the court should adopt a manifestation rule. In Prudential-LMI, the insured discovered an extensive crack in the foundation and floor slab of the insured apartment building in November 1985. Prudential-LMI, 51 Cal.3d at 680, 274 Cal.Rptr. 387, 798 P.2d 1230. Prudential-LMI had insured the building between 1977 and 1980. Prudential-LMI, 51 Cal.3d at 679, 274 Cal.Rptr. 387, 798 P.2d 1230. The insured brought suit against Prudential-LMI and three other insurers that had insured the property between 1971 and 1986. Prudential-LMI, 51 Cal.3d at 680-81, 274 Cal.Rptr. 387, 798 P.2d 1230. Prudential-LMI argued that it should not be responsible for coverage because the insured presented no evidence that a loss was suffered during its policy periods (1977-1980). The court held that:
[I]n first party progressive property loss cases, when ... the loss occurs over several policy periods and is not discovered until several years after it commences, the manifestation rule applies.
Prudential-LMI, 51 Cal.3d at 699, 274 Cal. Rptr. 387, 798 P.2d 1230.[3]
Ellis Court, in contrast, urges the court to adhere to an "injury-in-fact" trigger. Under this trigger, collapse occurs at the point in time when decay or rot first causes substantial structural impairment, even if a policy has expired before the loss is uncovered. The North Dakota Supreme Court adopted the injury-in-fact trigger for first-party coverage in 1995. Kief Farmers Coop. Elevator Co. v. Farmland Mut. Ins. Co., 534 N.W.2d 28 (N.D.1995). In Kief, in 1985 a contractor improperly installed a discharge flume hood on a 100,000-bushel grain storage bin. The flume system was used on only one *1090 day in 1988, but this single use damaged the wall and roof of the bin. The damage was latent, and not revealed until the spring of 1992. Farmland, which had provided property insurance to the insured from 1984 through August 1991, denied coverage, arguing that manifestation occurred after the policy expired.
The court rejected the manifestation trigger doctrine. In its analysis, the court focused on the policy's language, which stated, "we cover loss or damage commencing during the policy period shown in the declarations..." Kief, 534 N.W.2d at 31. Quoting a Webster Dictionary's definition of "commence" as meaning "begin, start, originate," the court found that if property damage begins during the policy period, then coverage is triggered, regardless of whether the policy has expired when the damage is discovered. Kief, 534 N.W.2d at 35 (quoting Webster's Third New International Dictionary 456 (1967)).
Washington has not recognized the manifestation doctrine in prior first-party cases, and we decline to adopt it here. Rather, our emphasis on close scrutiny and interpretation of policy contract language aligns with Kief's rejection of the manifestation trigger. The Washington Supreme Court articulated criteria for interpreting insurance contracts in Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wash.2d 654, 665-66, 15 P.3d 115 (2000), stating:
"In Washington, insurance policies are construed as contracts. An insurance policy is construed as a whole, with the policy being given a `fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.' If the language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists. If the clause is ambiguous, however, extrinsic evidence of intent of the parties may be relied upon to resolve the ambiguity. Any ambiguities remaining after examining applicable extrinsic evidence are resolved against the drafter-insurer and in favor of the insured. A clause is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable."
Weyerhaeuser, 142 Wash.2d at 665-66, 15 P.3d 115 (quoting American Nat'l Fire Ins. Co. v. B & L Trucking & Constr. Co., 134 Wash.2d 413, 427-28, 951 P.2d 250 (1998)).
As in Kief, the controversy here arises over differing interpretations of "commence" in the policy at issue. The Ellis Court policy provided for "loss commencing during the policy period." State Farm argues that "commence" means at the time damage was made manifest, which in this case was after the policy had expired. Ellis Court asserts that the trial court correctly interpreted the policy provision to mean that loss or damage commences when the damage first began, not when it was discovered. The policy here contains no language purporting to condition, limit, or connect the commencement of property loss or damage to when that damage was discovered. Kief, 534 N.W.2d at 35. The record contains no extrinsic evidence that the policy should be construed to mean that damage commences when it is discovered. We therefore interpret the provision in favor of the insured, and find that "commence" refers to the time the damage first began, not to when it was discovered.
Ellis Court asserts that reading the insurance policy as a whole further supports its position that "commence" in the provision at issue should not be construed to mean when the damage was discovered. The policy's Employee Dishonesty section states: "We will pay only for covered loss discovered no later than one year from the end of the policy period." (Emphasis added). The damage provision in controversy here contains no such discovery clause. This difference in the wording of the Employee Dishonesty and the damage provisions indicates that State Farm was able to protect itself with a discovery clause, and "further suggests that discovery is not a prerequisite to an occurrence of loss or damage." Kief, 534 N.W.2d at 36.
The North Dakota Supreme Court's discussion contrasting occurrence and discovery policies is also relevant to our inquiry. That Court explained, "[g]enerally, an `occurrence' policy provides coverage if the event insured against takes place within the policy period, *1091 regardless of when the injured party makes a claim." Kief, 534 N.W.2d at 36 (citing 1 R. Long, The Law of Liability Insurance § 1.08[4] (1995)). Discovery policies, in contrast, provide the following coverage:
[O]nly if a claim arising from a hazard insured against is presented during the policy period.... "Claims made" or "discovery" coverage was designed to limit, and therefore to more accurately predict, a carrier's risk and exposure and permits the carrier to establish reserves without regard to inflation or other future economic and legal developments, resulting in lower premiums than are charged for an `occurrence' policy. Several courts have recognized that interpreting an "occurrence" policy to provide coverage only when the injury or damage becomes manifest during the policy period unfairly transforms the more expensive "occurrence" policy into a cheaper "claims made" policy.
Kief, 534 N.W.2d at 36 (citation omitted).
Ellis Court also supports its position by arguing that this court has already interpreted "commence" to mean losses that occur during the policy period. Mercer Place, 104 Wash.App. 597, 604-05, 17 P.3d 626 (2000). In Mercer Place, a policy covered, as here, "loss commencing during the policy period." Mercer Place, 104 Wash.App. at 600, 17 P.3d 626. Ellis Court's reliance upon Mercer Place is misplaced. It is true that the provisions at issue are identically worded. However, the issue in that case was not, as here, whether an insurer must cover collapse when the claim was submitted after the policy had expired. In Mercer Place, both parties recognized that coverage was provided for collapse damage discovered in late 1996, at the time the policy was in effect. The issue was whether the policy would cover damage that had not yet reached a collapsed state at the time the policy was cancelled.[4]Mercer Place argued that once substantial impairment of structural integrity is found to have occurred during the policy period, those damages that have not reached the point of collapse, but that will inevitably reach that point, should also be covered. Mercer Place, 104 Wash. App. at 603, 17 P.3d 626. The court held that although the policy covered collapse that had occurred during the policy period, the language could not be construed to cover precursors to further loss, and that the policy at issue specifically excluded such coverage.[5]MERCER PLACE, 104 Wash.App. at 603, 17 P.3d 626.
Although Ellis Court is incorrect that the court interpreted "commence" to mean "begin" in Mercer Place, its proposed reading of "commence" nonetheless conforms to the policy language of the insurance contract at issue in this case. We adhere to the language of the parties' insurance policy in arriving at our decision, and resolve ambiguities in favor of the insured. Weyerhaeuser, 142 Wash.2d at 665-66, 15 P.3d 115.
III. Knowledge or Control
The "knowledge or control" provision of the policy at issue states: "We will not pay for loss while the chance of loss is increased by any means within your knowledge or control." State Farm argues that factual issues preclude summary judgment as to this defense. We disagree.
State Farm argues that "where, as here, a building owner has allowed water intrusion into the premises to continue until a collapse state is reached, there can be no question that State Farm's `chance of loss' has been substantially increased." State Farm maintains that testimony from inspectors and carpenters familiar with the building's problems provide evidence that Ellis Court increased its chance of loss. The testimony by inspectors and carpenters is evidence that water leakage had occurred, but it is not evidence *1092 that Ellis Court increased the chance of loss. The essence of State Farm's argument is that because Ellis Court did not do more, and sooner, to remedy the water leakage problem, it failed to decrease its loss. But failure to decrease a loss is not the same as increasing a loss. State Farm provides no other evidence to suggest that Ellis Court affirmatively increased the chance of loss. There are no genuine issues as to material facts as to this issue. Accordingly, we find that the trial court did not err in granting Ellis Court summary judgment as to State Farm's knowledge and control defense.
IV. Known loss defense
The parties do not dispute the policy provided Ellis Court coverage for "hidden decay." Nor do they dispute that Ellis Court's record of frequent water leakage repairs are evidence that Ellis Court had reason to suspect that decay existed. At issue, rather, is the interpretation of "hidden" in the hidden decay provision of the policy. State Farm asserts that "a jury could conclude from the evidence in the record that Ellis Court actually knew or, at the very least, should have known at some point before July 14, 1997, that the water intrusion problems and resulting damage in the building were significant enough that a reasonable person would have concluded that collapse would be likely to occur if the building [were] not repaired." Ellis Court maintains that under Panorama Village Condo. Ass'n Bd. of Dirs. v. Allstate Ins. Co., 144 Wash.2d 130, 140-41, 26 P.3d 910 (2001), because its policy did not state otherwise, "hidden" means "concealed" or "out of sight," and the known loss defense is thus precluded. The relevant provision in the policy provides:
We will pay for any accidental direct physical loss to covered property involving collapse of a building or any part of a building caused only by ... hidden decay."
Panorama dealt with a policy containing a hidden decay provision similar to the one at issue here. Panorama, 144 Wash.2d 130, 26 P.3d 910. In Panorama, a condominium complex had a history of maintenance problems. In May 1996, an investigator was unable to determine the presence of hidden decay. He then removed some siding to inspect the structural support and determined that decay had occurred and the complex was at risk of collapse due to dry rot. The insuror denied the claim Panorama submitted in July 1996, and Panorama filed suit in August 1996. The insuror challenged the trial court's summary judgment in favor of Panorama. On appeal, this court held that the trial court had erred when it determined that the term "hidden" meant "out of sight" or "concealed" rather than "known." Panorama, 144 Wash.2d at 136, 26 P.3d 910. Our Supreme Court reversed this court, observing that "hidden" as used in the policy was ambiguous, and stated that if the insured "intends `hidden' to mean `unknown,' it must say so." Panorama, 144 Wash.2d at 141, 26 P.3d 910. Instead, "hidden" is to be interpreted to mean "concealed" or "out of sight."
The hidden decay provision of the policy at issue here contains no clause or phrase limiting its interpretation to "known." Thus, under Panorama, Ellis Court's decay was hidden until it was uncovered in the spring of 2000. Accordingly, we find that the trial court did not err in granting Ellis Court summary judgment on State Farm's known loss defense.
V. Olympic Steamship fees and expenses
Olympic Steamship Co. v. Centennial Ins. Co., 117 Wash.2d 37, 53, 811 P.2d 673 (1991) held that "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue." Because Ellis Court prevails here, we award it fees and expenses under Olympic Steamship.
Affirmed.
BAKER and GROSSE, JJ., concur.
NOTES
[1] Greenwich Insurance Company's policy became effective September 1, 1999, the date on which Ellis Court cancelled its State Farm policy. State Farm received a judgment credit for the amount which Ellis Courts received from Greenwich.
[2] State Farm initially asserted that Ellis Court's coverage ended in July 1998 when it issued an "Amendatory Collapse Endorsement." Later in litigation, State Farm conceded the Endorsement was not lawful, and the parties filed a stipulation that the amendment was ineffective.
[3] The court noted: "[T]he manifestation rule in the first party context `promotes certainty in the insurance industry and allows insurers to gauge premiums with greater accuracy. Presumably this should reduce costs for consumers because insurers will be able to set aside proper reserves for well-defined coverages and avoid increasing such reserves to cover potential financial losses caused by uncertainty in the definition of coverage.' " Prudential-LMI, 51 Cal.3d at 699, 274 Cal.Rptr. 387, 798 P.2d 1230 (quoting Home Ins. Co. v. Landmark Ins. Co., 205 Cal.App.3d 1388, 1395-96, 253 Cal.Rptr. 277, (1988)).
[4] After the insurer cancelled the policy, Mercer Place sued, arguing that "since the policy covered `loss commencing during the policy period[,]' the policy applied to damage not yet in a collapsed state during the policy period that would eventually reach a point of collapse, given the progressive structural decay." Mercer Place, 104 Wash.App. at 600, 17 P.3d 626.
[5] The policy excluded loss caused by "continuous or repeated seepage or leakage of water that occurs over a period of time." Mercer Place, 104 Wash.App. at 599, 17 P.3d 626.