IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76519-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| TIEN THUY HO, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 25, 2019 |
| | ) | |

LEACH, J. — Tien Thuy Ho appeals her conviction for second degree assault of a child. She claims that the trial court improperly admitted evidence found during a search of her home, statements she made to an investigating officer, and statements made by the victim. She also challenges the sufficiency of the charging information. Because no illegal search occurred, Ho was not in custody when she spoke with officers, the victim's statements were admissible as prior inconsistent statements, and the information sufficiently described the elements of the charged crime, we affirm.

## FACTS

In January 2016, Child Protective Services (CPS) received an anonymous complaint that a 10-year-old boy had severe bruising on his buttocks and the

backs of his legs. The trial court's unchallenged findings, made after a hearing on Ho's request to suppress evidence, describe the investigation of this complaint:

A. On or about January 15, 2016, between approximately 1:41 p.m. and 4:45 p.m. the following events took place;

B. Deputy Koster was working uniformed patrol for Snohomish County driving a patrol car equipped with emergency lights and siren. At approximately 1:41 p.m. he was dispatched to a CPS (Child Protective Services) complaint located at 11831 Freeway Place, Everett, WA. According to the text of the call, Dianna Lucas, a Social Worker with DSHS [Department of Social and Health Services] called 9-1-1 requesting the assistance of SCSO (Snohomish County Sheriff's Office) to check the welfare (health and safety check) of a juvenile child at the listed address.

C. Upon arrival, Ms. Dianna Lucas explained to the deputy that a referral came into CPS the prior day regarding severe bruising on the buttocks of a ten year-old child (victim, N.Y.) who lived at the listed address.

D. According to the referral, the witness described the bruising and explained that it appeared to have been caused by a paddle with holes in it.

E. CPS/DSHS Social Worker Dianna Lucas and Deputy Koster made contact at the residence and spoke with Shun-Kai Yang, the alleged victim's biological father. Ms. Lucas and Deputy Koster introduced themselves and explained the reason for the contact (health and safety check of N.Y.). Shun-Kai Yang allowed them to enter the residence while they interviewed him. Mr. Yang explained that his wife, (defendant) Tien Ho and (victim) N.Y. were at the Mall [Tien Ho is N.Y.'s step-mother]. Ms. Lucas requested that Mr. Yang have Tien Ho and N.Y. return to the residence for an interview. Mr. Yang called Tien Ho, who agreed to return home.

F.    While Ms. Lucas and Deputy Koster were waiting for Tien Ho and N.Y. to return, Shun-Kai Yang explained that Tien Ho is the primary caregiver for their son. He explained that he works first shift at Boeing, so most of the parenting responsibilities are handled by Tien Ho. When questioned about how N.Y. gets disciplined, Mr. Yang told Deputy Koster that they talk with him, and occasionally spank him if needed. He denied knowing anything about bruising on his son, N.Y.

G.    A short time later, defendant Tien Ho and N.Y. arrived at the location. Dianna Lucas and Deputy Koster introduced themselves and explained the reason for the contact. Ms. Lucas requested to interview the victim in his bedroom. Shun-Kai Yang and Tien Ho did not object to the interview. The deputy stood by while Ms. Lucas interviewed N.Y in his bedroom.

H.    Deputy Koster reported that N.Y. seemed hesitant and reserved during the conversation. Ms. Lucas started with some introductory questions involving school, hobbies, etc. When Ms. Lucas asked N.Y. about how he is disciplined, the victim claimed that his mom (the defendant) "accidentally gets mad, she accidentally slaps my hand." N.Y. said she slapped him with an open hand, and that it happened about two days prior. N.Y. also stated that he falls down a lot and was not being careful.

I.    When Ms. Lucas asked if he had any bruising, N.Y. indicated that he had bruising on his bottom because [he] fell from a tree. When asked what tree he fell from, N.Y. said that he did not know. Ms. Lucas asked N.Y. if she left the room would he show the bruises to the deputy. The victim then said that he did not want to talk anymore. Deputy Koster reported that N.Y. essentially shut down at that point, and looked at his feet when he told Ms. Lucas he did not want to talk anymore.

J.    Dianna Lucas and the deputy re-contacted Shun-Kai Yang and Tien Ho in the living room. Ms. Lucas then requested that Mr. Yang and the defendant take N.Y. to the hospital for an evaluation. Tien Ho reportedly made several excuses why she could not take N.Y. to the hospital.

K.   Deputy Koster explained to the defendant that based on the accusations it was necessary for N.Y. to be evaluated. He explained to Ms. Ho that spanking a child (within reason) is legal in Washington. Tien Ho explained that N.Y. reportedly has ADHD [attention deficit hyperactivity disorder] and that he has difficulty obeying instruction[s]. The defendant subsequently admitted to the deputy that N.Y. did have bruising on his buttocks.

L.   The defendant admitted to the deputy that she had spanked N.Y. two times with her hand because she was overwhelmed by N.Y.'s behavior. Again, Tien Ho was asked by the CPS Social Worker and the deputy to take N.Y. to the hospital, but she continued to argue.

M.   Tien Ho eventually admitted that she used a "stick" to spank N.Y. Deputy Koster asked the defendant if it was a stick in the yard or one in the house. Ms. Ho told Koster that the "stick" was in the house. Koster asked Tien to show him the "Stick."

N.   The defendant escorted Deputy Koster to the downstairs portion of the house to the rear sliding glass door. Tien Ho removed a wood dowel approximately three feet long and approximately slightly more than 1 inch in diameter.

O.   Deputy Koster then took custody of the dowel/"stick." He confirmed with the defendant "You used this to spank [N.Y.]?" to which Tien Ho replied "Yes." The defendant and the deputy then returned to the upstairs living room and Koster showed Ms. Lucas the "stick" that the defendant admitted using to spank N.Y. Tien Ho then volunteered "I promise, this will never happen again." The defendant subsequently explained that in her culture that it is ok to spank your child.

P.   Deputy Koster explained to the defendant the seriousness of using the dowel to spank the victim.

Q.   The deputy consequently contacted SCSO Sgt. Heitzman with the Special Investigation Unit and briefed him on the incident. It was confirmed with the sergeant that N.Y. should

be taken to the hospital for an evaluation, and that Tien Ho should be arrested.

R.   Deputy Koster then told Tien Ho that she was under arrest. He advised Ms. Ho of her Constitutional Rights. Koster asked Tien Ho if she understood her rights to which she replied "Yes." The deputy then asked the defendant if she was willing to speak with him to which she replied "Yes." Tien Ho subsequently asked the deputy "Can I have a pen and piece of paper to write a letter to the Judge to tell him that this will never happen again?" Deputy Koster told the defendant that he would allow her to write a statement once they got to the Snohomish County Jail.

S.   Upon arrival at the Jail, prior to entry into booking, Tien Ho told Deputy Koster "I think I want to talk to a lawyer." He did not ask Tien Ho any further questions about the incident.

(Some alterations in original.)

The State charged Ho with second degree assault based on two theories, assault with a deadly weapon and an alternative "torture" theory. During the jury trial, the State called N.Y. as a witness. He testified that he "wasn't hit with a stick." He said he did not receive any injuries from his stepmother and did not remember bruising on his body. After N.Y.'s testimony, the State used parts of his pretrial forensic interview to impeach his credibility. The court instructed the jury to consider these statements only to evaluate N.Y.'s credibility and not to consider them for the truth of the matter asserted. The jury did not take the interview transcript with it into the jury room.

After the State rested, the prosecutor recognized that the information did not allege all of the elements necessary for its "torture" theory and withdrew its

pertinent proposed instruction.[1] The court dismissed this alternative theory and instructed the jury only on second degree assault with a deadly weapon.

The jury returned a verdict of guilty of second degree assault. Ho appeals.

## STANDARD OF REVIEW

When we review a trial court's decision to deny a motion to suppress, we look to the record to determine whether substantial evidence supports the court's findings of fact and then determine whether the findings support its conclusions of law.[2] Here, because Ho does not challenge any finding, we accept them as true.[3] We review de novo whether the findings support the conclusions of law.[4]

We review evidentiary rulings by the trial court to admit or exclude evidence for an abuse of discretion.[5]

## ANALYSIS

Ho makes multiple challenges to the evidence admitted at trial. She also challenges the sufficiency of the information. Specifically, she claims that Deputy Koster illegally seized her at her home, making all evidence obtained after this seizure inadmissible. She also claims that Deputy Koster subjected her to

---

[1] The day before withdrawing the instruction, the State attempted to amend but discovered it could not amend once it had rested.

[2] State v. Weyand, 188 Wn.2d 804, 811, 399 P.3d 530 (2017).

[3] State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

[4] Weyand, 188 Wn.2d at 811; State v. Weller, 185 Wn. App. 913, 922, 344 P.3d 695, (2015).

[5] State v. Gunderson, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014).

custodial questioning without required Miranda[6] warnings and conducted a warrantless search of her home without her consent. And she claims the trial court abused its discretion by admitting parts of the forensic interview of N.Y. because it was hearsay and conducted in violation of RCW 26.44.030 and RCW 26.44.100. Finally, she claims the trial court should have dismissed the case because the State improperly amended its charge.

In her reply brief, Ho first discusses the admissibility of the photographic evidence of N.Y.'s injuries. She does not raise this issue in her opening brief and only appears to be responding to the State's discussion of the issue. "[A] contention presented for the first time in the reply brief will not receive consideration on appeal."[7] We decline to review this issue.

Ho also filed a statement of additional grounds raising the same issues asserted in her counsel's opening brief.

Because none of Ho's claims warrant appellate relief, we affirm.

Suppression of Evidence

The trial court's unchallenged findings support its conclusions that no seizure occurred, that Ho was not subject to custodial interrogation when she

---

[6] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[7] Fosbre v. State, 70 Wn.2d 578, 583, 424 P.2d 901 (1967).

confessed, and that the search of her home was consensual. So the trial court did not err when it denied her motions to suppress.

## A. *Search and Seizure*

Ho contends that Deputy Koster unlawfully seized her and conducted custodial questioning without first giving her constitutionally required warnings. We disagree.

Both the Fourth Amendment to the United States Constitution and article 1, section 7 of the Washington Constitution prohibit unreasonable search and/or seizure. An appellant making an unconstitutional seizure claim has the burden of proving that a seizure occurred.[8]

Because article I, section 7 "'grants greater protection to individual privacy rights than the Fourth Amendment,'"[9] we analyze Ho's claim under it. A seizure occurs under article I, section 7 when an officer restrains an individual's freedom of movement and, given the officer's display of authority or use of physical force, she would not reasonably believe that she is free to leave or decline a request.[10] The test is objective.[11] So, if the officer uses no physical force, the defendant must establish that, given all the circumstances, a reasonable person would have

---

[8] State v. Young, 135 Wn.2d 498, 509-10, 957 P.2d 681 (1998).
[9] State v. Flores, 186 Wn.2d 506, 512, 379 P.3d 104 (2016) (quoting State v. Harrington, 167 Wn.2d 656, 663, 222 P.3d 92 (2009)).
[10] State v. Beito, 147 Wn. App. 504, 508, 195 P.3d 1023 (2008).
[11] Young, 135 Wn.2d at 511.

experienced an unreasonable restraint on her freedom.[12] Whether an interaction is a seizure does not depend on "the officer's suspicions" but instead on "the interaction between the person and the officer."[13]

An officer commanding a person, issuing orders, or demanding a particular action all establish a situation where a reasonable person would likely not feel free to end the encounter.[14] By contrast, if an officer merely questions a person, he has not seized that person.[15] Further, an officer does not seize a person by entering a home if a person with authority to consent to the entry does so, regardless of whether the officer advised the person of his right to refuse consent.[16]

Here, Yang consented to Koster's entry. Throughout their time in the house, Lucas and Koster told Ho what they were doing. They asked permission to interview N.Y. in his bedroom and stopped the interview when N.Y. said he did not want to speak anymore. They did not investigate the house, apart from the time spent in the entryway and living room talking to Yang and Ho, in N.Y.'s bedroom, and in the basement, after being led down there by Ho. Ho handed Koster the dowel. Koster and Lucas repeatedly asked Ho to take N.Y. to the

---

[12] O'Neill, 148 Wn.2d at 574; Young, 135 Wn.2d at 510-11.
[13] O'Neill, 148 Wn.2d at 575.
[14] O'Neill, 148 Wn.2d at 577.
[15] O'Neill, 148 Wn.2d at 574.
[16] State v. Khounvichai, 149 Wn.2d 557, 563, 69 P.3d 862 (2003).

hospital. Only after all of these events and after talking to Heitzman did Koster decide to arrest Ho. These facts provide sufficient evidence to support a conclusion that a reasonable person would feel she could terminate the interview or leave to a different room.

Ho compares this case to Rogers v. Richmond.[17] Yet the court in Richmond did not focus on a Fourth Amendment claim of unreasonable search and seizure but rather on a Fourteenth Amendment due process claim.[18] Further, Richmond is factually distinguishable. In Richmond, the accused was incarcerated and, after refusing to confess, was told that his wife would be taken into custody.[19] Here, Ho was in her house and free to ask the officer to leave or to move to a different room.

We conclude that Ho failed to demonstrate that Koster seized her. The trial court did not err when it denied her motion to suppress this evidence.

B. *Custodial Interrogation*

Ho asserts that the State violated her right against self-incrimination because Koster did not give her a Miranda warning until he said he was going to arrest her and thus the trial court erred by not suppressing her confessions.

---

[17] 365 U.S. 534, 81 S. Ct. 735, 5 L. Ed. 2d 760 (1961).
[18] Richmond, 365 U.S. at 543-44.
[19] Richmond, 365 U.S. at 535-36.

The Fifth Amendment to the United States Constitution protects against compelled self-incrimination.[20] For a confession made while in custody to comply with the Fifth Amendment, the State must show that it informed the suspect of her right to remain silent and she knowingly and intelligently waived it.[21] This requirement is triggered when that person is in custody and being interrogated by a state agent.[22] A person is in custody if "a reasonable person in the individual's position would believe . . . she was in police custody to a degree associated with formal arrest."[23] This is an objective test.[24] Whether or not an officer intended to take the person into custody or was focusing on the person as a potential suspect does not affect the analysis.[25]

This court looks at the totality of the circumstances to decide whether a suspect was in custody.[26] To show that she was in custody at the time she confessed, the defendant must show by objective facts that the presence of the officer restricted her freedom of movement.[27] If the confession was made in her home and the defendant shows that officers had "turned the otherwise comfortable and familiar surroundings of the home into a 'police dominated

---

[20] Miranda, 384 U.S. at 457-58.
[21] Miranda, 384 U.S. at 471, 478-79.
[22] State v. Lorenz, 152 Wn.2d 22, 36, 93 P.3d 133 (2004).
[23] Lorenz, 152 Wn.2d at 36-37.
[24] Lorenz, 152 Wn.2d at 36-37.
[25] Lorenz, 152 Wn.2d at 37.
[26] United States v. Craighead, 539 F.3d 1073, 1082 (9th Cir. 2008).
[27] State v. Post, 118 Wn.2d 596, 607, 826 P.2d 172, 837 P.2d 599 (1992).

atmosphere,'" she demonstrates custody.[28]    United States v. Craighead[29]
identifies the factors a court considers when reviewing the circumstances to
determine if a police atmosphere occurred as

> (1) the number of law enforcement personnel and whether they
> were armed; (2) whether the suspect was at any point restrained,
> either by physical force or by threats; (3) whether the suspect was
> isolated from others; and (4) whether the suspect was informed that
> he was free to leave or terminate the interview, and the context in
> which any such statements were made.

The Craighead court found a police-dominated atmosphere because eight
officers, a subset with their weapons drawn, entered the house.[30]   And the
suspect in that case was isolated in a storage room, he could not leave because
an armed guard stood between him and the exit, and he knew the officers would
not leave the premises until they completed the search for which they had a
warrant.[31]

Here, Yang gave permission for Koster and Lucas to enter.   Only one
enforcement officer was present, albeit armed, when Ho made her confessions.
She was not isolated from her husband, Yang.   These circumstances are very
different from those in Craighead and support the conclusion that this was not a
custodial interrogation.   Only the fact that Ho was not told she could leave or

---

[28] Craighead, 539 F.3d at 1083-84.
[29] 539 F.3d 1073, 1084 (9th Cir. 2008).
[30] Craighead, 539 F.3d at 1085.
[31] Craighead, 539 F.3d at 1086, 1088-89.

terminate the interview supports the assertion that she was in custody. This fact alone is insufficient to outweigh the substantial evidence indicating Ho was not in custody when she made her confessions.

We conclude that Ho did not establish that she was in custody. The trial court did not err by denying her motion to suppress.

## Additional Claims

### A. RCW 26.44

Ho asserts a violation of RCW 26.44.030 and RCW 26.44.100. She claims that this violation required suppression of evidence.

RCW 26.44 establishes guidelines for reporting child abuse. RCW 26.44.030(1)(a) lists professions mandated to report suspected child abuse. It also requires an investigation or a family assessment be made in response to a report of alleged abuse.[32] During the investigation, "the preferred practice is to request a parent's . . . permission to interview the child."[33] The investigator must determine whether the child wishes a third party to be present.[34] RCW 26.44.100(2) guides investigators primarily as to how to provide notification of a child abuse allegation and what to include in their report once they complete the investigation.

---

[32] RCW 26.44.030(11)(a).
[33] RCW 26.44.030(14)(a)(i).
[34] RCW 26.44.030(14)(a)(i).

RCW 26.44.030 does not state, or even suggest, that suppression is the appropriate remedy for a violation. The legislature adopted RCW 26.44 to protect children from child abuse. We cannot assume that the legislature would intend a court to suppress evidence that might establish abuse was occurring because of a guideline violation. Ho cites no authority for her contrary position. We assume that counsel searched and found none.[35] We reject this claim.

Ho also fails to establish that RCW 26.44.100 was violated because this statute contains no requirement that the parents be advised about their due process rights when a child abuse allegation is investigated. We reject Ho's argument.

*B. Forensic Testimony*

Ho claims that the trial court abused its discretion by admitting part of the videotaped forensic interview with N.Y. because it was inadmissible hearsay. She also contends the admission violated her rights under the confrontation clause of the Sixth Amendment.

Prior inconsistent statements may be admitted to impeach a witness's credibility.[36] If a court admits a statement for impeachment purposes, it does not

---

[35] Mercer Place Condo. Ass'n v. State Farm Fire & Cas. Co., 104 Wn. App. 597, 606, 17 P.3d 626 (2000) (quoting Grant County v. Bohne, 89 Wn.2d 953, 958, 577 P.2d 138 (1978)).
[36] State v. Allen S., 98 Wn. App. 452, 466, 989 P.2d 1222 (1999).

admit the evidence as proof of the matter asserted. So the evidence is not subject to the requirements of the confrontation clause.[37]

Here, a segment of the forensic interview was admitted to impeach N.Y. after he testified that he had not been hit with a stick. The trial court included an instruction to the jury limiting their consideration of this evidence. The jurors did not have a transcript of the interview in the jury room. Ho claims that it was improperly admitted under hearsay exceptions for a recorded recollection or a prior inconsistent statement. But she does not contest its status as impeachment evidence, making it admissible as a prior inconsistent statement.

Here, the State did not offer parts of the forensic interview to establish the truth of the matters asserted. Since the State offered them for impeachment, their admission did not violate Ho's confrontation clause rights. The trial court did not abuse its discretion by admitting them.

*C. Charging Document*

Ho contends that the court improperly allowed the State to amend the charging document after it rested its case. She claims that when the State rested its case, the information charged her with assault of a child in the third degree and that the State asked to amend it to second degree assault. The record does not support Ho's claim. Instead, it shows that the State, after resting its case, asked

---

[37] Crawford v. Washington, 541 U.S. 36, 59 n.9, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

to withdraw one of its two theories of second degree assault of a child. The court dismissed the "torture" based charge and instructed the jury only on the remaining charge of second degree assault with a deadly weapon.

We reject this claim.

### D. Fourteenth Amendment Claims

Ho periodically and briefly contends that her Fourteenth Amendment due process rights have been violated. Ho provides no argument to support her claim and no authority for her assertions. Without authority, "'the court may assume that counsel, after diligent search, has found none.'"[38] We decline to review this claim.

### Statement of Additional Grounds

Ho filed a statement of additional grounds for review. In it she asserts that the admitted evidence stemmed from an investigation that violated her Fourth Amendment rights, as well as the rights of Yang and N.Y. She also asserts a violation of her Fifth Amendment right against self-incrimination and her Fourteenth Amendment right of due process. These claims overlap with those made in her opening brief. As discussed above, we find no merit in Ho's assertions.

---

[38] Mercer Place Condo. Ass'n, 104 Wn. App. at 606 (quoting Bohne, 89 Wn.2d at 958).

## A.    Fourth Amendment

Ho claims that she, N.Y., and her husband Yang were subject to an unreasonable search and seizure and any evidence flowing from it should be suppressed.  As previously discussed, this claim fails.

Also, she does not have standing to assert a violation of N.Y's or Yang's Fourth Amendment rights against unreasonable search and seizure.

## B.    Fifth Amendment

Ho asserts that her Fifth Amendment right against self-incrimination was violated because when she made her confessions she was in custody.  She also asserts this claim in her brief.  For the reasons discussed above, she fails to prove this assertion.

## C.    Fourteenth Amendment

Ho claims that her Fourteenth Amendment right to due process was violated.  As we stated above, we find no merit in this claim.

## CONCLUSION

We affirm.  Ho does not show violations of her Fourth and Fifth Amendment rights warranting suppression of evidence.  She fails to show that the State's alleged violation of RCW 26.44.100 and RCW 26.44.030 entitled her to relief.  And she fails to establish the trial court abused its discretion by admitting impeachment evidence.  The record does not support her contention that the

-17-

No. 76519-1-I / 18

State improperly amended its charge. She does not provide argument or authority to support her claim of a Fourteenth Amendment due process violation.

_____ Leach, J.

WE CONCUR:

_____     _____
Chun, J.           Schindler, J.