MICHIGAN SUGAR COMPANY v EMPLOYERS MUTUAL
LIABILITY INSURANCE COMPANY OF WISCONSIN

Docket No. 50640. Submitted March 11, 1981, at Detroit.—Decided
June 4, 1981.

The Michigan Sugar Company brought an action against the
Employers Mutual Liability Insurance Company of Wisconsin,
the Commercial Union Insurance Company, and the General
Adjustment Bureau, Inc., for recovery of insurance benefits.
Before the trial was concluded, the Bureau was released. Fol-
lowing trial, plaintiff's claim against Employers was held to be
barred by a provision in the contract of insurance, and plaintiff
was found to have no cause of action against Commercial,
Oakland Circuit Court, George La Plata, J. Plaintiff appeals the
judgment regarding Employers. *Held:*

The improper installation of a heating appartus in plaintiff's
silo was the proximate cause of damages. However, coverage for
such damage was excluded by the language of the contract of
insurance in light of the surrounding facts as developed at trial
and, thus, recovery is barred.

Affirmed.

1. INSURANCE — NEGLIGENCE — ACTIONS — QUESTIONS OF FACT.

Generally, the question of proximate cause in insurance cases, as
in negligence cases, is to be determined by the trier of fact.

2. WORDS AND PHRASES — PROXIMATE CAUSE.

Proximate cause is that cause which in a natural and continuous
sequence, unbroken by any new, independent cause, produces
an injury, without which such injury would not have occurred.

REFERENCES FOR POINTS IN HEADNOTES
[1] 44 Am Jur 2d, Insurance § 2071.
[2] 43 Am Jur 2d, Insurance § 1182.
[3] 57 Am Jur 2d, Negligence § 192.
[4] 17 Am Jur 2d, Contracts § 244.
   43 Am Jur 2d, Insurance § 260.
   Intention of parties as governing interpretation. 100 L Ed 133.
[5] 17 Am Jur 2d, Contracts §§ 241, 245-248, 272, 273.
   43 Am Jur 2d, Insurance §§ 259, 260.

3. NEGLIGENCE — PROXIMATE CAUSE — INTERVENING CAUSES.

An act of negligence which is a substantial factor in bringing about an injury does not cease to be a legal and proximate cause of the injury because of the intervention of a subsequent act of negligence which contributes to the injury where the prior act is still in operation and the injury inflicted is not different in kind from that which otherwise would have resulted.

4. INSURANCE — CONTRACTS — JUDICIAL CONSTRUCTION.

An insurance contract is subject to the same rules of construction as other agreements and should be interpreted to reflect the intent of the parties.

5. INSURANCE — CONTRACTS — INTENT OF PARTIES.

The intent of the parties to an insurance contract may be ascertained by according clear and unambiguous contract language its plain and ordinary meaning, and where the language is ambiguous the facts and circumstances surrounding the execution of the contract may be looked to for the purpose of resolving the ambiguity.

*Hill, Lewis, Adams, Goodrich & Tait* (by *Timothy D. Wittlinger* and *Richard C. Sanders*), for plaintiff.

*Harvey, Kruse & Westen, P.C.* (by *John A. Kruse* and *Michael F. Schmidt*), for defendant.

Before: V. J. BRENNAN, P.J., and M. J. KELLY and D. C. RILEY, JJ.

M. J. KELLY, J. Plaintiff-appellant, Michigan Sugar Company, appeals as of right from an opinion and order of the lower court finding no cause of action in the plaintiff's suit to recover insurance benefits from defendant-appellee, Employers Mutual, and defendant, Commercial Union. In its claim, plaintiff alleged that the destruction of specified amounts of sugar in its storage silo was covered by policies of insurance with each defendant. The lower court, following a bench trial, held

the claim against defendant Employers Mutual to be barred by the "Perils Excluded" provision of its policy. As to Commercial Union, the trial court found the evidence could not support a finding that the objects insured in its policy caused the damage to the plaintiff's sugar. Plaintiff does not appeal that aspect of the judgment finding no cause of action against defendant Commercial Union.

The facts pertinent to this appeal are as follows. Plaintiff maintains a large horizontal storage silo that is "approximately the size of a football field" at its plant in Caro, Michigan. The silo is approximately 220 feet long and 60 feet wide; the side walls are 21 feet high and are gabled 46 feet above ground level. The silo has a total capacity of approximately 200,000 hundredweight of sugar. A hundredweight is equivalent to 100 pounds of sugar.

When the silo was constructed in 1966, heating elements were imbedded in the concrete floor so that moisture could be eliminated. The heating elements were controlled by thermostats. During the first two years of the silo's operation, the thermostats were set at approximately 70 degrees Fahrenheit and remained at that setting year round. When plaintiff discovered that some of the sugar was caking on the silo floor due to the heat, the procedure was varied so that the heating elements were used only during the one-week period immediately before the sugar was stored. The new procedure was preceded by a yearly cleaning of the silo floor, after which the heating elements would be set at 90 degrees Fahrenheit for the one-week period to dry out the floor.

On or about November 1, 1974, plaintiff entered into the disputed contract of insurance with Em-

ployers Mutual. The pertinent provisions of the contract stated that, in return for annual premiums of $240,000, Employers Mutual would insure certain property located at plaintiff's Caro plant "against all risks of direct physical loss" in the total amount of $25,000,000. The policy provided in part:

"3. Perils Insured Against:
"This policy insures against all risks of direct physical loss to the property covered from any external cause * * * except as hereinafter excluded.
"4. Perils Excluded: This policy does not insure against loss:

* * *

"(k) By shrinkage, evaporation, loss of weight, contamination, change in flavor, color, texture, or finish, change in temperature (whether or not atmospheric) or humidity (but excepting loss by or resulting from freezing of automatic sprinkler, fire hydrant, standpipe, plumbing or heating systems) rust or corrosion; unless loss by fire or explosion not otherwise excluded ensues, and then the Company shall be liable only for such ensuing loss * * *."

On February 11, 1975, at a time when the silo was almost full of sugar, a worker discovered that a large amount of sugar in the silo "was bubbling through the top of the pile of sugar and running down the side in a black lava-like substance". According to the plaintiff, the sugar had become heated to a level where it changed from sucrose to levulose and dextrose, which could not be sold or used by plaintiff. The plaintiff claimed a loss of $1,597,464.14, plus interest.

After the silo was cleaned out, Employers Mutual hired Ellis/Naeyaert Associates, Inc., to investigate the loss and determine its cause. Avery Burdick, an electrical staff consultant, conducted

the investigation. On September 22, 1975, Ellis/
Naeyaert issued its final report on the loss. The
report states in pertinent part:

"In this second report our opinion as to the cause of
the loss remains as thermostat C-4 being incapable of
controlling the temperature due to a number of factors:

\* \* \*

"2. Improper location of the thermistor sensing probe
for thermostat C-4.

"3. Inadequate length of heating cables which re-
sulted in an uneven installation and therefore uneven
heating of the floor slab.

\* \* \*

"5. Uneven lie of heating cables.

\* \* \*

"\* \* \* Therefore, improper installation of the heating
cables and the thermostat sensing probe are the pri-
mary causes of this loss.

\* \* \*

"In conclusion it is our opinion the improper installa-
tion of the heating cables and the thermostat sensing
probe are the primary causes of this loss."

On October 17, 1975, Employers Mutual advised
plaintiff that its claim for the loss was denied and
that no payment would be made under the policy.
In the trial court's opinion denying the plaintiff's
claims, it was specifically found that: (1) a mechan-
ical breakdown exclusion found in paragraph 4(g)
of plaintiff's policy with Employers Mutual was
not applicable, (2) the change of temperature ex-
clusion found in paragraph 4(k) of the policy pre-
cluded recovery by the plaintiff, and (3) the change
of temperature exclusion was not ambiguous,
therefore not to be interpreted against Employers
Mutual.

We first deal with a question of causation. At

trial, Employers Mutual argued that the condition of the plaintiff's stored sugar was caused entirely by a change in the substance's temperature, a cause of damage precluded under subsection 4(k) of the parties' insurance agreement. The plaintiff admits that the injury to its sugar was the result of a change in temperature, but argues that the temperature change was itself caused by improper placement of the thermistor sensing probe and heating cables, which would not be excluded from the "all risks" coverage in the contract.

As in negligence cases, the question of proximate cause in insurance cases is generally held to be one for the trier of fact. *Kangas v New York Life Ins Co,* 223 Mich 238, 244-245; 193 NW 867 (1923), 18 Couch on Insurance (2d ed), § 74:697, p 607. The *Kangas* majority, per Justice McDONALD, also noted the intent of qualifying language in a disputed insurance contract:

"I am of the opinion that the qualifying language of the contract may properly be interpreted to mean that the parties intended efficient, proximate cause to be the ultimate test of liability. This interpretation renders the contract of some substantial value to the man who pays the premium as well as to the party who carries the risk." *Kangas, supra,* 244.

In *Weissert v City of Escanaba,* 298 Mich 443, 452; 299 NW 139 (1941), the Supreme Court defined proximate cause as " 'that which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, without which such injury would not have occurred * * *' ". See also *Selph v Evanoff,* 28 Mich App 201, 206; 184 NW2d 282 (1970).

In the present case, the lower court's finding on the issue of causation was predicated primarily on

the report of Avery Burdick, an electrical staff consultant. Burdick concluded that improper placement of the heating cables and thermostat sensing probe, installed in 1966, was the primary cause of the damage herein. Lapse of time does not foreclose the cause of an injury from being its proximate cause. In *Parks v Starks,* 342 Mich 443, 447; 70 NW2d 805 (1955), the Supreme Court quoted from *Solomon v Continental Baking Co,* 172 Miss 388, 393; 160 So 732 (1935), for the following rule:

" 'Where an act of negligence is a substantial factor in bringing about an injury, it does not cease to be a legal and proximate cause thereof because of the intervention of a subsequent act of negligence of another which contributed to the injury, if the prior act of negligence is still operating, and the injury inflicted is not different in kind from that which would have resulted from the prior act. 2 Restatement Torts, §§ 440-442, 447."

Applying the above tests, we find that the improper installation of the silo's heating appartus was a proximate cause of the damage to plaintiff's sugar.

This conclusion does not, however, compel the further finding that the plaintiff's claim is compensible under its insurance contract with Employers Mutual. The exclusions in subsection 4(k), we believe, encompass the plaintiff's loss and bar liability under the contract.

In *Hall v Equitable Life Assurance Society of the United States,* 295 Mich 404, 408; 295 NW 204 (1940), our Supreme Court held that an insurance contract is subject to the same rules of construction as other agreements. Among these rules is the general principle that contracts should be inter-

preted so as to reflect the parties' intent. *Piasecki v Fidelity Corp of Michigan,* 339 Mich 328; 63 NW2d 671 (1954). To ascertain the parties' intent, clear and unambiguous contract language is to be accorded its plain and ordinary meaning. *Bank of the Commonwealth v Criminal Justice Institute,* 102 Mich App 239, 244; 301 NW2d 486 (1980). The facts and circumstances surrounding execution of the agreement may be looked to for the purpose of resolving ambiguous language in the instrument. *Shirey v Camden,* 314 Mich 128, 130; 22 NW2d 98 (1946).

Exclusion 4(k) of the policy provided as follows:

"4. Perils Excluded: This policy does not insure against loss:

\* \* \*

"(k) By shrinkage, evaporation, loss of weight, contamination, change in flavor, color, texture, or finish, change in temperature (whether or not atmospheric) or humidity (but excepting loss by or resulting from freezing of automatic sprinkler, fire hydrant, standpipe, plumbing or heating systems) rust or corrosion; unless loss by fire or explosion not otherwise excluded ensues, and then the Company shall be liable only for such ensuing loss \* \* \*."

The language of subsection 4(k) is susceptible to only one conclusion under these facts. Subsection 4(k) excludes from coverage damage to the sugar caused by a change in temperature "whether or not atmospheric". The following language then exempts from its exclusions (thus providing coverage) the enumerated hazards, if they are caused by a freeze in the silo's "heating systems". Reading these two provisions together, we believe the contract anticipated injurious temperature changes

caused by the silo's internal heating system. In those situations when the malfunction resulted in a change of temperature and damage caused by freezing of the heating system, the exclusion from coverage would not apply. Hence, when the temperature change was caused by a heating system malfunction not caused by freezing, the exclusion bars recovery under the contract.

Affirmed.