[No. 63933-1-I.   Division One.   November 1, 2010.]

MAX B. SPRAGUE ET AL., *Appellants*, V. SAFECO INSURANCE
COMPANY OF AMERICA, *Respondent*.

*John P. Zahner* (of *Foster Pepper PLLC*), for appellants.

*M. Colleen Barrett* and *Kevin J. Kay* (of *Barrett & Worden PS*), for respondent.

¶1 GROSSE, J. — A homeowner's all-risk insurance policy that does not cover losses due to an excluded peril may, nonetheless, cover losses resulting from that excluded peril under an ensuing loss clause. Here, the home was in a state of collapse and the homeowner's insurance policy did not specifically exclude collapse. The policy, however, covered ensuing loss. In our judgment, collapse was a covered ensuing loss resulting from the perils of construction defects and rot, even though those perils were themselves excluded. We reverse and remand.

FACTS

¶2 Max and Krista Sprague (collectively Sprague) purchased their home in 1987, and it has been insured with Safeco Insurance Company of America (Safeco) continuously since 1992.[1] From 1995 to 1996, Sprague extensively remodeled the home and installed the decks that are the subject of this dispute. The decks are supported by six "fin walls" that are covered with Dryvit (exterior insulating and finishing system). In March 2008, Sprague discovered decay in these fin walls and filed a claim with Safeco. Safeco hired an independent expert, Pacific Engineering Technologies, to investigate the claim. Pacific's investigation revealed that the decayed wood posts in each of the six piers supporting Sprague's multilevel decks resulted in a substantial impairment of structural integrity and were in a state of imminent collapse. Pacific also determined that these conditions were present and occurred prior to 2003.[2] Pacific attributed the decayed wood framing to a combination of

- Inadequate flashing between the deck beams and the deck piers
- Possible inadequate flashing between the deck guard rails and the deck piers
- Inadequate ventilation of the deck piers.

The policy specifically excluded damage as a result of construction defects and rot.

¶3 The pertinent provisions of the homeowner's insurance policy provide:

**SECTION I – PROPERTY COVERAGES**

BUILDING PROPERTY WE COVER
COVERAGE A – DWELLING

---

[1] Safeco policy number OH635096 between September 1992 and September 2008.

[2] The year 2003 marked the time that Safeco prospectively limited collapse coverage.

We cover:

1.  the dwelling on the **residence premises** shown in the Declarations used principally as a private residence, including structures attached to the dwelling; and

2.  materials and supplies located on or next to the **residence premises** used to construct, alter or repair the dwelling or other structures on the **residence premises**.

. . . .

BUILDING LOSSES WE COVER

We insure for accidental direct physical loss to property described in **Building Property We Cover** except as limited or excluded.

BUILDING LOSSES WE DO NOT COVER

We do not insure or cover loss caused directly or indirectly by any of the following excluded perils:

. . . .

5. loss caused by:

    a.   wear and tear, marring, deterioration;

    . . . .

    c.   smog, rust, mold, wet or dry rot;

    . . . .

    g.   birds, vermin, rodents, insects or domestic animals

. . . .

Under items 1. through 5., any ensuing loss not excluded is covered.

. . . .

7. **Water Damage**, meaning

    a.   flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

. . . .

14. Weather Conditions. A weather condition which results in:

    . . . .

    c.   flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

**15. Planning, Construction or Maintenance**, meaning faulty, inadequate or defective:

. . . .

  **b.** design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

  **c.** materials used in repair, construction, renovation or remodeling; or

  **d.** maintenance;

of property whether on or off the **insured location** by any person or organization. However, any ensuing loss not excluded or excepted in this policy is covered.

¶4 Safeco denied coverage because the cause of the loss was defective workmanship and rot, both of which were excluded from coverage. Sprague argued that collapse was an ensuing loss and thus covered. Both parties moved for summary judgment and the trial court granted summary judgment to Safeco. Sprague appeals.

## ANALYSIS

¶5 Interpretation of an insurance contract is a matter of law, reviewed de novo.[3] In analyzing coverage, Washington follows the efficient proximate cause rule.[4] Under this rule, the predominant cause of the loss determines coverage.[5] An ensuing loss provision, however, is an exception to an exclusion and preserves coverage when the loss is caused by an excluded peril.[6] Sprague contends that since collapse is not specifically excluded in the policies extant between 1999 and 2003, it is a covered ensuing loss

---

[3] *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 730-31, 837 P.2d 1000 (1992).

[4] *Findlay v. United Pac. Ins. Co.*, 129 Wn.2d 368, 372, 917 P.2d 116 (1996).

[5] *See Graham v. Pub. Emps. Mut. Ins. Co.*, 98 Wn.2d 533, 538, 656 P.2d 1077 (1983).

[6] *Wright v. Safeco Ins. Co. of Am.*, 124 Wn. App. 263, 274, 109 P.3d 1 (2004).

under the policy language: "However, any ensuing loss not excluded is covered."

¶6 Safeco's pre-2003 policies for Sprague are all-risk policies and cover losses to the building and attached deck structures, unless specifically excluded.[7] Safeco's policy did not exclude collapse as a peril. In *Wright v. Safeco Insurance Company of America*, we opined that an ensuing loss exception preserved coverage for damage from water leaks caused by faulty construction, despite the exclusion for construction defects.[8] However, there the loss claimed was from mold, and mold was itself specifically excluded. Thus, the ensuing loss provision did not operate because there was no covered loss.[9] Unlike *Wright*, the policy language here, excluding loss for construction defects, specifically permits coverage for any ensuing loss not otherwise excluded.

¶7 In conclusion, the losses that are faulty construction and rot are not covered, but the "ensuing losses," those that result from such faulty construction or rot, are covered because such an ensuing loss is not excluded elsewhere in the policy. Since Safeco's own experts have testified that the damage to the fin walls has placed the decks in a state of imminent collapse, there is no factual dispute. The fact that Safeco defined "collapse" to mean actually falling down in later polices is immaterial to the case at bar. Because the parties are in agreement that the damage occurred prior to 2003, the later definition of "collapse" does not apply.

¶8 Washington has not decided the meaning of "collapse" as used in insurance policies.[10] As noted in *Mercer*

---

[7] *See Frank Coluccio Constr. Co. v. King County*, 136 Wn. App. 751, 757 n.1, 150 P.3d 1147 (2007) ("All-risk insurance covers all risks that are not specifically excluded in the terms of the contract and takes the opposite approach of traditional policies, sometimes called 'named perils' or 'specific perils' policies, which exclude all risks not specifically named.").

[8] 124 Wn. App. 263, 109 P.3d 1 (2004).

[9] *Wright*, 124 Wn. App. at 274-75.

[10] *Mercer Place Condo. Ass'n v. State Farm Fire & Cas. Co.*, 104 Wn. App. 597, 602, 17 P.3d 626 (2000).

*Place Condominium Ass'n v. State Farm Fire & Casualty Co.*, "[a] growing majority of jurisdictions have assigned the more liberal standard, 'substantial impairment of structural integrity,' to the use of 'collapse' in insurance policies, as opposed to the minority view, which requires that the structure actually fall down."[11] Indeed in *Mercer*, State Farm and its policyholder agreed that collapse "would be interpreted to mean 'substantial impairment of structural integrity.' "[12] The *Mercer* court noted that this same interpretation had been adopted by State Farm in prior claims involving a collapse clause.[13]

¶9 Here, Safeco's own expert, Pacific, determined that there was a "substantial impairment of structural integrity" to the fin walls and that they were in "a state of imminent collapse." The report itself defined "imminent collapse" as occurring "when the structural supporting elements/assemblies are so severely damaged that even the reserve strength due to the safety factors built into the building code allowable capacities is exhausted." Safeco's own senior adjuster stated in her report:

> It appears from my review of the [Pacific] report that the conditions of significant structural impairment and imminent collapse existed prior to the point in time that the Safeco policy forms changed and defined the term collapse.
>
> Will await coverage counsel's recommendation, but I suspect that this loss will be covered.

For purposes of the pre-2003 policies, we hold that the findings of Safeco's own experts that the building was in a state of imminent collapse and that there was substantial impairment to the structure of the building were sufficient to establish collapse in the present case.

---

[11] 104 Wn. App. 597, 602 n.1, 17 P.3d 626 (2000).

[12] 104 Wn. App. at 600.

[13] 104 Wn. App. at 600.

*Attorney Fees*

¶10 Because Sprague is entitled to coverage under the Safeco policy, Sprague is entitled to attorney fees under *Olympic Steamship Co. v. Centennial Insurance Co.* ("an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue").[14]

¶11 We reverse and remand.

ELLINGTON and SCHINDLER, JJ., concur.

Review granted at 171 Wn.2d 1028 (2011).

---

[14] 117 Wn.2d 37, 53, 811 P.2d 673 (1991).