[No. 85794-6.   En Banc.]
Argued September 15, 2011.     Decided May 17, 2012.

MAX B. SPRAGUE ET AL., *Respondents*, v. SAFECO INSURANCE
COMPANY OF AMERICA, *Petitioner*.

*M. Colleen Barrett* and *Kevin J. Kay* (of *Barrett & Worden PS*), for petitioner.

*John P. Zahner* (of *Foster Pepper PLLC*), for respondents.

¶1 KORSMO, J.[*] — The supports for the deck system at Max and Krista Sprague's house rotted out due to improper construction techniques exposing the supports to the elements. Their claim for homeowners' insurance coverage was denied due to exclusions for rot and defective construction. The trial court granted summary judgment to their insurer, Safeco Insurance Company of America. The Court of Appeals reversed, finding that the ensuing loss provision provided coverage for the otherwise excluded losses. We now reverse the Court of Appeals.

## FACTS

¶2 The Spragues purchased their home in 1987. Safeco has insured the property continuously since the Spragues purchased the home. In 1995-96, the Spragues extensively remodeled the property and installed the deck system at issue here. The system consists of two large decks on the bottom and middle levels, and a smaller third deck on the top level. Six supports, known as "fin walls," run from a concrete pad up through the decks. The supports are not connected to the house.

¶3 The fin walls were encased in a foam and stucco coating. In 2007, contractors repairing rot in an exterior wall near a bay window suggested that the Spragues install vents in the fin walls to permit the supports to air out if they ever got wet.[1] When the vents were installed in March 2008, workers discovered that the fin walls were in an advanced state of decay. The Spragues notified Safeco of the problem.

---

[*] Judge Kevin M. Korsmo is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

[1] The Spragues submitted a claim to Safeco for the window repairs. The claim was denied; it is not at issue in this action.

¶4 Safeco hired engineers to study the problem. They warned the Spragues not to use the decks and also directed a contractor to install shoring to uphold the decks. The engineers eventually concluded that the fin walls had inadequate flashing and other construction defects that caused the supports to rot. The decks were in a state of imminent collapse due to impairment of the structural integrity of the system. The condition had existed prior to September 2003.

¶5 The Spragues sought coverage from Safeco due to the decks being in a state of "collapse." A claims representative tentatively believed there would be coverage under the initial policies issued to the Spragues. The company, however, ultimately denied coverage due to the exclusions for construction defects and rot damage.

¶6 The Safeco homeowners' policy provided coverage for all losses that were not excluded. Prior to September 2003, the policies issued by Safeco did not define the term "collapse" nor explicitly address "collapse" as a covered or excluded loss. The policies did exclude coverage for losses caused by "smog, rust, mold, wet or dry rot." The policies also provided that despite those exclusions, "any ensuing loss not excluded is covered." Another set of exclusions covered building defects, including defective design, construction, or materials. That section of the policies also recognized that "any ensuing loss not excluded is covered."

¶7 Safeco issued new policies to the Spragues in September 2003. The new policies expressly included "collapse" in the exclusion from coverage. "Collapse" was defined to mean fallen to the ground.

¶8 The Spragues paid $282,000 to repair the fin walls. The day after Safeco denied coverage, the Spragues filed suit. The trial court granted summary judgment to Safeco. The Spragues then appealed to the Court of Appeals. Division One of that court reversed, concluding that the decks had collapsed and that collapse was not an excluded loss due to the ensuing loss provisions of the policy. *Sprague*

*v. Safeco Ins. Co. of Am.*, 158 Wn. App. 336, 241 P.3d 1276 (2010).

¶9 This court then granted discretionary review of that decision. *Sprague v. Safeco Ins. Co. of Am.*, 171 Wn.2d 1028, 257 P.3d 662 (2011). The case was consolidated for argument with *Vision One, LLC v. Philadelphia Indemnity Insurance Co.*, 174 Wn.2d 501, 276 P.3d 300 (2012). The cases were subsequently severed for the issuance of separate opinions.

## ANALYSIS

¶10 The question presented here is whether the advanced decay of the fin walls was a separate, ensuing loss[2] that was covered under the policy despite the exclusions for rot and building defects. We conclude that it was not.

¶11 Interpretation of the language of an insurance policy presents an issue of law that is reviewed de novo. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454 (2007). Insurance contracts are construed in accordance with the meaning understood by the typical purchaser of the insurance. *Id.* As with any contract, ambiguous policies are construed against the drafter. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 733, 837 P.2d 1000 (1992).

¶12 The law governing all risk policies and ensuing loss provisions was authoritatively set forth in the companion decision in *Vision One*; that analysis will not be repeated here. Instead, this case presents a straightforward issue of applying that analysis to these facts. As recognized in *Vision One*, the policy at issue here is an "all risk" policy that provides coverage for all losses except those that had been excluded. *Vision One*, 174 Wn.2d at 513-14. The parties agree that the loss occurred prior to the revised homeowners' policy issued in 2003 that excluded "collapse"

---

[2] The terms "ensuing loss" and "resulting loss" have the same meaning. *See Vision One*, 174 Wn.2d at 512 n.6. We will use the term "ensuing loss" in this opinion because that is the language used in the policies in this case.

from the insured risks. The Spragues argue that their deck was in a state of collapse and because "collapse" was not excluded under the pre-2003 policies, coverage was available under the ensuing loss provision. Safeco disputes whether the deck had collapsed and contends that coverage is excluded under the rot and defective construction exclusions.

¶13 We need not decide whether the deck had collapsed due to the loss of structural integrity even though it had not fallen to the ground. Whether or not the deck had reached a state of collapse, its condition was the result of the excluded perils of defective workmanship and rot and did not constitute a separate loss apart from those perils.

¶14 As explained in *Vision One*, the purpose of an ensuing loss provision is to limit the scope of an exclusion from coverage; losses caused by the excluded peril will be covered unless they are subject to their own specific exclusions. The classic example described there—a (covered) fire loss resulting from (excluded) defective wiring—explains the essence of the clause. *Id.* at 514-15. In effect, the clause breaks the causal chain between the excluded risk and losses caused by the excluded peril in order to provide coverage for the subsequent losses. *TMW Enters., Inc. v. Fed. Ins. Co.*, 619 F.3d 574, 578-79 (6th Cir. 2010).

¶15 "Many events can be characterized as both a loss and a peril," and distinguishing between them will at times constitute "a semantic distinction without a difference." *Vision One*, 174 Wn.2d at 518. While we agree with that observation, we do not agree that it is applicable here. Although "collapse" is a covered peril under the pre-2003 Safeco policies at issue here, it is not a loss under these facts.

¶16 "Rot" is typically not defined in insurance policies, and courts must rely on dictionary definitions of the term. *E.g., Phillips v. United Servs. Auto. Ass'n*, 146 S.W.3d 629, 634 (Tenn. Ct. App. 2004); *Stamm Theatres, Inc. v. Hartford*

*Cas. Ins. Co.*, 93 Cal. App. 4th 531, 540, 113 Cal. Rptr. 2d 300 (2001). "Rot" is defined:

**1 a :** to undergo natural decomposition **:** decay as a result of the action of bacteria or fungi ... **b :** to become unsound or weak ...
**2 a :** to go to ruin **:** DETERIORATE.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1976 (1993). Stated simply, "rot" describes the *process* of deterioration.

¶17 These definitions confirm that rot typically results in the complete deterioration of the rotting material. In the case of a wooden structure, the natural process of deterioration will result in collapse and eventual decomposition of the wood. Advanced deterioration does not transmute the rotting process in some sort of alchemical fashion to a new and separate state of "collapse." A "collapse," whether consisting of a loss of structural integrity or a plunge to the earth, is the end result of the deterioration that constitutes "rot." It is not a new and different peril.

¶18 The facts of *Vision One* demonstrate proper application of the ensuing loss provision. The policy at issue there excluded from coverage losses caused by faulty workmanship or deficient design but covered resulting losses including collapse. *Vision One*, 174 Wn.2d at 506-07, 516-17. A floor slab collapsed when the shoring gave way due to defective workmanship, leading to the loss of the slab and the need to clean up the debris and cement. *Id.* at 506, 509. This court reinstated a judgment that awarded the building owners damages for the loss of the floor slab, reconstruction of that slab, and clean up costs; the cost of the shoring work was not covered due to the faulty workmanship and defective design exclusions. *Id.* at 510-11, 523.

¶19 As in *Vision One*, there is no coverage here for the fin walls because of the policy exclusions for rot and defective workmanship. If there had been losses other than to the fin walls—an injury to a person hurt by the collapse or property damaged by the deck failure—coverage would have existed under the ensuing loss provisions of the policy.

Unlike *Vision One*, that was not the case here. The only loss was to the deck system itself. That loss resulted from rot caused by construction defects.

¶20 The trial court correctly concluded that there was no coverage for the rotting deck supports. It properly granted summary judgment.

## CONCLUSION

¶21 Rotting wood deteriorates to the point that it loses its structure. That natural process of decay does not amount to a new or different condition. Because the homeowners' policies here excluded coverage for both rot and defective construction, the deterioration of the fin walls was not a covered condition. We reverse the Court of Appeals and reinstate the judgment of the trial court.

MADSEN, C.J.; FAIRHURST and J.M. JOHNSON, JJ.; and ALEXANDER, J. PRO TEM., concur.

¶22 ALEXANDER, J.[*] (concurring) — I agree with the majority that Safeco Insurance Company of America properly denied coverage because the homeowners' policy before us excluded coverage for both rot and defective construction. I write separately, however, in order to set forth my opinion that even if Safeco's policy covered losses associated with "collapse," it is apparent that Max and Krista Sprague's deck did not collapse. In reaching that conclusion, I am mindful of the principle that we are to construe terms in an insurance policy from the standpoint of a typical purchaser of insurance. In my view, a typical purchaser of insurance would be inclined to agree with the following definition of "collapse" that is contained in *Webster's Third New International Dictionary* 443 (2002): "to break down completely :

---

[*] Justice Gerry L. Alexander is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

fall apart in confused disorganization : crumble into insignificance or nothingness . . . fall into a jumbled or flattened mass." The record here shows that the Spragues' deck did not break down. Neither did it fall apart or crumble. Thus, it cannot be said that it collapsed.

¶23 The dissent disagrees, highlighting a portion of *Webster's* definition of "collapse," which is as follows: " 'a breakdown of vital energy, strength, or stamina.' " Dissent at 534 (quoting WEBSTER'S, *supra*, at 443). It is apparent that this portion of *Webster's* definition of "collapse" has no application to the collapse of structures but, rather, relates to the kind of emotional or mental collapse that may be experienced by an individual. Here, of course, we are confronted with an alleged collapse of a structure, a deck, not the asserted loss of physical abilities or physical depression. Construing the term "collapse" in a commonsense way, as would a typical purchaser of insurance, and in the context of what occurred here, we should hold that the Spragues' deck did not collapse. For that reason, as well as that set forth in the majority opinion, there is no coverage under the Safeco policy.

FAIRHURST, J., concurs with ALEXANDER, J. PRO TEM.

¶24 STEPHENS, J. (dissenting) — Despite acknowledging the proper interpretation of "ensuing loss" set forth in our opinion in the companion case of *Vision One, LLC v. Philadelphia Indemnity Insurance Co.*, 174 Wn.2d 501, 276 P.3d 300 (2012), the majority concludes there is no coverage for Max and Krista Sprague's collapsed deck. I disagree. This case is in all material respects the same as *Vision One*, and the distinctions the majority would draw rest upon a faulty application of the ensuing loss clause. I would affirm the Court of Appeals.

¶25 First, it must be remembered the Spragues had an all-risks policy with Safeco Insurance Company. As we

explained in *Vision One*, such policies " 'provide coverage for all risks unless the specific risk is excluded.' " *Vision One*, 174 Wn.2d at 513 (quoting Steven Plitt, Daniel Maldonado & Joshua D. Rogers, *Introductory Concepts of the Risk; Public Policy Insurability, and Causation, in* 7 COUCH ON INSURANCE 3D § 101:7, at 101-17 (2006)); *see also Findlay v. United Pac. Ins. Co.*, 129 Wn.2d 368, 378, 917 P.2d 116 (1996) (noting that in an all-risk policy, "any peril *that is not specifically excluded* in the policy is an insured peril"). During the relevant time frame, the Spragues' policy contained no exclusion for the collapse of a structure.[3]

¶26 The policy listed several excluded perils under a section entitled "Building Losses We Do Not Cover." Clerk's Papers (CP) at 51. Relevant to this case, the policy excluded losses "caused directly or indirectly" by "deterioration," "mold," and "wet or dry rot." CP at 51, 74-75. This exclusion was subject to a clause providing that "any ensuing loss not excluded is covered." CP at 51. The policy also excluded losses "caused directly or indirectly" by "faulty, inadequate[,] or defective . . . workmanship [or] construction." CP at 51-52, 74, 76. Just as did the exclusion for deterioration, mold, and rot, the faulty workmanship and construction exclusion provided that "any ensuing loss not excluded or excepted in this policy is covered." CP at 52.

¶27 The Court of Appeals concluded that the ensuing loss clause covers the damage to the Spragues' deck. The court explained that "the losses that are faulty construction and rot are not covered, but the 'ensuing losses,' those that result from such faulty construction or rot, are covered because such an ensuing loss is not excluded elsewhere in

---

[3] Beginning in 2003, Safeco added an endorsement to the Spragues' homeowners policy excluding "collapse" as a peril. Clerk's Papers (CP) at 98. Under the new endorsement, the policy did not cover any losses "caused directly or indirectly" by "collapse." *Id.* The endorsement also contained a definition of the word "collapse," stating that only "an abrupt falling down or caving in of a building or any part of a building" qualified as a collapse. CP at 99. Some limited coverage for collapse was provided under the policy's section for "Additional Property Coverages." CP at 98-99.

the policy." *Sprague v. Safeco Ins. Co. of Am.*, 158 Wn. App. 336, 341, 241 P.3d 1276 (2010). I agree. The ensuing loss clause in the Spragues' policy provided that "any ensuing loss not excluded or excepted in this policy is covered." CP at 52, 76. While the policy excluded losses associated with the defective construction of the deck, the ensuing loss clause preserved coverage for any losses not otherwise excluded under the policy. Because the policy did not exclude losses associated with collapse—collapse damages being the losses that ensued from the rot or defective construction— the policy covers the Spragues' loss.

¶28 Safeco insists that even if its policy covers collapse, coverage should apply only when a structure actually falls down. The majority does not endorse this argument, and for good reason. Absent a policy definition, courts have generally rejected the fall-down notion of collapse in favor of the more liberal standard, " 'substantial impairment of structural integrity.' " *Mercer Place Condo. Ass'n v. State Farm Fire & Cas. Co.*, 104 Wn. App. 597, 602 n.1, 17 P.3d 626 (2000). We implicitly adopted the more liberal definition of collapse in *Panorama Village Condominium Owners Ass'n Board of Directors v. Allstate Insurance Co.*, 144 Wn.2d 130, 134-35, 144-45, 26 P.3d 910 (2001). And the federal district court for the Western District of Washington, applying Washington law, concluded that Washington would reject the fall-down definition of collapse in favor of the liberal standard. *Allstate Ins. Co. v. Forest Lynn Homeowners Ass'n*, 892 F. Supp. 1310, 1314 (W.D. Wash. 1995), *opinion withdrawn from publication, Allstate Ins. Co. v. Forest Lynn Homeowners Ass'n*, 914 F. Supp. 408 (W.D. Wash. 1996) (unpublished). This formulation is consistent with the dictionary definition of collapse, which defines "collapse" to include not only a falling down, but also "a breakdown of vital energy, strength, or stamina." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 443 (2002). Moreover, "[r]equiring the insured to await an actual collapse would not only be economically wasteful, but would also conflict with the insured's contractual and com-

mon law duty to mitigate damages." *Beach v. Middlesex Mut. Assurance Co.*, 205 Conn. 246, 253 n.2, 532 A.2d 1297 (1987) (citation omitted).[4]

¶29 While the majority does not endorse Safeco's definition of collapse, it insists we need not decide if the deck collapsed because "[w]hether or not the deck had reached a state of collapse, its condition was the result of the excluded perils of defective workmanship and rot and did not constitute a separate loss apart from those perils." Majority at 529. This analysis misses the mark. The fact that the deck collapsed is key to a proper application of the ensuing loss clause.

¶30 We explained in *Vision One* that the ensuing loss clause limits the scope of what is otherwise excluded under the policy. 174 Wn.2d at 514. This clause ensures "that if one of the specified uncovered events takes place, any ensuing loss which is otherwise covered by the policy will remain covered. The uncovered event itself, however, is never covered." *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 734, 837 P.2d 1000 (1992). In a sense, the ensuing loss clause creates an exclusion within an exclusion. *Id.*; *see also Capelouto v. Valley Forge Ins. Co.*, 98 Wn. App. 7, 16, 990 P.2d 414 (1999).

¶31 The majority wrongly requires that there be a "separate" cause of an ensuing loss, distinct from the excluded peril. Majority at 530. But, such a requirement would render the ensuing loss clause inoperative because the clause is implicated only when a covered loss *results or ensues* from an excluded peril. This presupposes causation.

---

[4] Safeco asserts that its pre-2003 policies did in fact define collapse as requiring the structure to fall down because the personal property section clarifies that "[collapse] does not include settling, cracking, shrinking, bulging or expansion." CP at 54, 79. Safeco reads this provision to exclude any form of collapse short of the actual falling down of the structure. A majority of courts have rejected this argument, even where the policy defines collapse to not include settling and cracking. *Am. Concept Ins. Co. v. Jones*, 935 F. Supp. 1220, 1227 (D. Utah 1996) (collecting cases). As the federal district court explained, a policy of this type may exclude "*mere* settling or cracking," but it does not exclude "settling or cracking that results in substantial impairment of a home's structural integrity." *Id.*

What the majority appears to be searching for is a physical line of demarcation. Thus, it seizes on the fact that in *Vision One*, the shoring installation was physically separate from the floor slab and related concrete work damaged in the collapse. Majority at 530.

¶32 I acknowledge that the nature of the ensuing loss is easier to see in *Vision One*, but the same principles are at play here. The engineers who examined the Spragues' deck concluded that the "decayed wood framing in the deck piers" was caused by a combination of (1) "[i]nadequate flashing between the deck beams and the deck piers," (2) "[p]ossible inadequate flashing between the deck guardrails and the deck piers," and (3) "[i]nadequate ventilation of the deck piers." CP at 109. They determined that the deck had been in a state of imminent collapse since before 2003. CP at 106. The engineering report described the likely process that undermined the structural integrity of the piers:

> Water drained through the gaps between the spaced decking boards and onto the deck beams below. The water then seeped through the cracks along the sides of the deck beams and under the small metal flashings over the deck beams into the pier assembly. Once inside the pier assembly, the water came in contact with the wood framing. The absence of ventilation in the deck piers prevented the framing from drying. The moist conditions were conducive to the growth of fungi in the wood that causes decay and, over time, resulted in the gradual deterioration of the wood framing.

CP at 227.

¶33 While the majority reduces the circumstances here to the "natural process of decay," majority at 531, in fact it is possible to identify the progression of events from faulty workmanship and wood rot to the imminent collapse. Just as in *Vision One*, the covered loss *ensued* from excluded perils. To the extent the ensuing loss is harder to visualize in this case, perhaps that is because it developed inside the deck fin walls rather than out in the open, as in *Vision One*.

¶34 Finally, the majority insists that the ensuing loss clause applies only to personal injury or property damage that results from a collapse, noting that here, "[t]he only loss was to the deck system itself." Majority at 531. We rejected a similar, separate property argument in *Vision One*. 174 Wn.2d at 517-18. While the majority agrees with our observation there that an event can often be characterized as either a loss or a peril, it fails to see how the collapse at issue here is a loss. Majority at 529. Why? The ensuing loss of collapse is strikingly similar to the textbook example of ensuing loss, i.e., the fire that results from faulty wiring. In either case, the only property loss may be to the very structure affected by the excluded peril of poor workmanship. For example, a fire caused by faulty wiring may burn only the wall in which the wiring is contained. On the other hand, the fire may cause additional damage to the contents of the structure, to a neighboring structure, or to a person. Either way, the covered ensuing loss is the fire. It is the same with collapse. The ensuing loss is properly understood as the collapse, regardless of whether only the deck is damaged or whether it falls on someone or something. Significantly, the coverage expert in *Vision One* acknowledged at trial that there is no meaningful difference between a fire loss and a collapse loss under an ensuing loss clause. 174 Wn.2d at 518. And, Safeco's adjuster noted that "if collapse occurred as an ensuing loss to the faulty construction exclusion, coverage would have been triggered." CP at 168.[5]

¶35 In sum, the Spragues' all-risk policy contemplated losses caused by collapse—including substantial impairment of structural integrity. The ensuing loss clause provides coverage because the deck collapse ensued from the

---

[5] The amount of coverage presents a different question. The majority seems bothered that recognizing coverage for collapse would seem to provide coverage for the very peril Safeco's policy excludes, namely wood rot and defective construction. But, there is a difference between recognizing coverage and calculating the loss. The extent to which damages from excluded perils may be subtracted from ensuing loss coverage is not before us.

defective construction of the deck, and the policy did not exclude coverage for collapse. I would affirm the Court of Appeals conclusion that there is coverage. Because the Spragues have demonstrated coverage under the policy, I would also hold they are entitled to fees under *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 51-54, 811 P.2d 673 (1991).

C. JOHNSON, CHAMBERS, and OWENS, JJ., concur with STEPHENS, J.

Reconsideration denied July 9, 2012.