## NOTICE: SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/walareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| THE GARDENS CONDOMINIUM, a Washington non-profit corporation, | No. 83678-1-I |
| Appellant, | |
| v. | PUBLISHED OPINION |
| FARMERS INSURANCE EXCHANGE, a reciprocal company, | |
| Respondent. | |

BOWMAN, J. — Faulty design and construction of the Gardens Condominium roof assembly led to inadequate ventilation, which trapped condensation and excess humidity, damaging the roof. Gardens held an "all-risk" insurance policy issued by Farmers Insurance Exchange. The policy excludes coverage for faulty construction, but "if loss or damage by a Covered Cause of Loss results, [Farmers] will pay for that resulting loss or damage." Farmers denied coverage for the roof repairs and Gardens sued. The trial court granted summary judgment for Farmers. Because the trial court misinterpreted the resulting loss clause in Farmers' policy, we reverse and remand for further proceedings consistent with this opinion.

FACTS

Gardens is a 26-unit condominium building in Shoreline. In 2002, Gardens discovered water damage to its roof fireboard and sheathing. The

No. 83678-1-I/2

damage resulted from a faulty design of the roof assembly, which did not have adequate ventilation. An engineer redesigned the roof to improve ventilation by adding "2x2 sleepers" above the roof's structural joists. Gardens completed its roof repairs in 2004.

In 2019, Gardens discovered the 2004 repairs were defective because the sleepers did not add enough space in the roof to vent moisture. So, the roof joist cavities continued to trap water vapor emitted from inside the units and allowed condensation to form during cool weather and overnight temperature drops. That repeated exposure to moisture damaged the sheathing, fireboard, joists, and sleepers.

Gardens sought coverage from Farmers for repairs. Gardens held an all-risk insurance policy from Farmers, which covered all "direct physical loss or damage" to the building not specifically excluded by the policy.[1] But the policy excluded coverage for damage caused by faulty design or repair. The policy provides:

> We will not pay for loss or damage caused by any of the excluded events described below. Loss or damage will be considered to have been caused by an excluded event if the occurrence of that event directly or solely results in loss or damage or initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence.
>
> . . . .
>
> **b.** Faulty, inadequate or defective:
>
> **(1)** Planning, zoning, development, surveying, siting;

---

[1] Gardens has held insurance policies from Farmers since 2002. This appeal involves language from only the 2003 to 2004 policy.

2

No. 83678-1-I/3

> **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>
> **(3)** Materials used in repair, construction, renovation or remodeling; or
>
> **(4)** Maintenance;
>
> of part or all of any property on or off the described premises. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

The last sentence of the provision is known as a "resulting loss" clause.[2]

Farmers investigated Gardens' claim and determined that the claimed damage "was independently caused by lack of ventilation in the roof assembly caused by faulty, inadequate and defective construction." Farmers then denied coverage because the faulty construction "initiated a sequence of events resulting in the loss or damage." Gardens objected to Farmers' denial of coverage, contending that the resulting loss clause narrowed the faulty workmanship exclusion, preserving coverage for damage caused by a resulting covered peril, and that the policy covers the perils of humidity and condensation. Farmers still denied coverage.

In January 2021, Gardens sued Farmers for breach of contract and declaratory relief. Gardens and Farmers cross-moved for summary judgment. Both motions relied on stipulated facts, including that the damage to the roofing assembly "was caused by condensation and/or excess humidity resulting from

---

[2] It is also known as an "ensuing loss" clause. The terms "resulting loss" and "ensuing loss" are interchangeable. See Vision One, LLC v. Phila. Indem. Ins. Co., 174 Wn.2d 501, 514, 276 P.3d 300 (2012). We use "resulting loss" because that is the language of Farmers' policy.

3

No. 83678-1-I/4

inadequate ventilation of the roof assembly due to the faulty, inadequate, or defective construction, repairs, and/or redesign."[3]

The court granted summary judgment for Farmers. It concluded that the policy excludes coverage because faulty construction began a sequence of events that resulted in the damage, and the resulting loss clause exception did not "somehow resurrect[ ]" coverage.

Gardens appeals.

ANALYSIS

Gardens argues the trial court misinterpreted the resulting loss clause and erred by granting summary judgment for Farmers. We agree.

We review rulings on summary judgment de novo, performing the same inquiry as the trial court. Ellis v. City of Seattle, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). We will grant summary judgment only if, from all the evidence, reasonable persons could reach but one conclusion. Ellis, 142 Wn.2d at 458.

We interpret language from an insurance policy de novo. Vision One, LLC v. Phila. Indem. Ins. Co., 174 Wn.2d 501, 512, 276 P.3d 300 (2012). We "construe insurance policies as the average person purchasing insurance would." Id. That is, we give the language a fair, reasonable, and sensible construction. Id. We construe ambiguities in a policy against the drafter-insurer. Id. And

---

[3] Gardens concedes that the resulting loss clause did not preserve coverage for correcting the defective sleepers.

4

No. 83678-1-I/5

because coverage exclusions " 'are contrary to the fundamental protective purpose of insurance,' " we strictly construe exclusions against the insurer, not extending them " 'beyond their clear and unequivocal meaning.' " Id. (quoting State Farm Fire & Cas. Co. v. Ham & Rye, LLC, 142 Wn. App. 6, 13, 174 P.3d 1175 (2007)).

Citing Vision One, Gardens argues that the "trial court failed to properly consider the nature of Farmers' obligation" under the policy. According to Gardens, under Washington law, "a resulting loss clause preserves coverage for damage caused by a covered event . . . that results from an excluded peril."

In Vision One, our Supreme Court explained how resulting loss clauses operate in all-risk insurance policies. 174 Wn.2d at 513-17. There, an all-risk building policy excluded from coverage losses caused by faulty workmanship, but it covered losses from resulting covered perils such as collapse. Id. at 506-07. During construction, a floor slab collapsed when shoring gave way because of defective workmanship, leading to the loss of the slab and the need to clean up debris and hardened cement from the floor below. Id. at 506. The building owner sought coverage for the damage caused by the collapse, which the insurer denied. Id. at 507. The trial court ruled for the building owner, citing the policy's resulting loss clause. Id. at 510-11. Division Two reversed. Id. at 511. But our Supreme Court reinstated the trial court judgment. Id. at 523.

The Supreme Court explained that all-risk policies cover all risks unless explicitly excluded. Vision One, 174 Wn.2d at 513. But if an exclusion has a resulting loss clause, it "carve[s] out an exception to the policy exclusion." Id. at

5

514.  That is, resulting loss clauses "limit the scope of what is otherwise excluded under the policy." Id. at 515.  They ensure " 'that if one of the specified uncovered events takes place, any ensuing loss which is otherwise covered by the policy will remain covered,' " but " '[t]he uncovered event itself . . . is never covered.' " Id. at 515 (quoting McDonald v. State Farm Fire & Cas. Co., 119 Wn.2d 724, 734, 837 P.2d 1000 (1992)).

> [T]he dispositive question in analyzing [resulting] loss clauses is whether the loss that ensues from the excluded event is covered or excluded.  If the ensuing loss is also an excluded peril or an excluded loss under the policy, there is no coverage.  But if the policy covers the peril or loss that results from the excluded event, then the [resulting] loss clause provides coverage.

Id. at 516.[4]  Applying those rules, the Supreme Court held that the policy's faulty workmanship provision excluded coverage for the faultily assembled shoring. Id. at 518.  But the policy covered losses from the collapse because it was a covered peril resulting from the faulty workmanship.  Id.

Here, Gardens' policy excludes coverage of faulty construction.  That exclusion limits Gardens' coverage.  But the resulting loss clause narrows that exclusion.  In the resulting loss clause, Farmers agreed to pay for any loss or damage caused by a covered peril resulting from faulty construction.  The parties stipulated that "[t]he damage was caused by condensation and/or excess humidity resulting from inadequate ventilation of the roof assembly due to the faulty, inadequate, or defective construction, repairs and/or redesign."  So, if the policy covers the perils of condensation and excess humidity, it covers the loss or damage from those perils.

---

[4] Citations omitted.

Farmers argues that we should apply the "efficient proximate cause rule" to determine whether the damage at issue flows from an excluded event preventing coverage. See McDonald, 119 Wn.2d at 732. Citing Vision One, 174 Wn.2d at 521, Farmers says, "This concept is known as 'inverse efficient proximate cause.'" But the efficient proximate cause rule mandates coverage when two or more perils combine in sequence to cause a loss, and a covered peril is the predominant or efficient cause of the loss. Id. at 519. We do not apply the rule in reverse. Id. In other words, when an excluded peril sets in motion a causal chain that includes covered perils, the efficient proximate cause rule does not mandate exclusion of the loss. Id.

And Farmers' reference to the term "inverse efficient proximate cause" in Vision One is taken out of context. In Vision One, the insurer denied coverage under two policy exclusions—one for faulty workmanship and one for defective design. 174 Wn.2d at 508. The faulty workmanship exclusion in that policy contained a resulting loss clause, but the defective design exclusion did not. Id. The insurance company argued the resulting loss clause applied only if application of the efficient proximate cause rule showed that "faulty workmanship was the efficient proximate cause of the loss." Id. at 518. The Supreme Court made clear that we do not use the efficient proximate cause rule when "an excluded peril sets in motion a causal chain that includes covered perils."[5] Id.

---

[5] Farmers argues that even if the efficient proximate clause rule does not apply, nothing precludes an insurance company from drafting policy language that, as here, denies coverage when an excluded peril initiates an unbroken causal chain. See Vision One, 174 Wn.2d at 519. This is true. But here, Farmers also drafted a resulting loss clause, which limited the scope of that exclusion.

No. 83678-1-I/8

But it determined that even if it were to apply that "sort of inverse efficient proximate cause analysis," it would show that faulty design and faulty workmanship were concurrent causes of the covered peril of collapse, so the resulting loss clause applied. Id. at 521-22.

Citing TMW Enterprises, Inc. v. Federal Insurance Co., 619 F.3d 574 (6th Cir. 2010), Farmers next urges us to interpret its resulting loss clause to apply to losses from only unforeseen covered events, occurring independent of the excluded peril. According to Farmers, if we do not restrict the resulting loss clause to nonexcluded, unforeseen intervening events, it "[w]ould [s]wallow the [f]aulty [w]orkmanship [e]xclusion [w]hole."

In TMW, the Sixth Circuit considered the scope of a similar resulting loss exception to a faulty workmanship exclusion. 619 F.3d at 579. It concluded that the "faulty workmanship exclusion applies to loss or damage 'caused by or resulting from' the construction defect" and damage resulting " 'natural[ly] and continuous[ly]' from the faulty workmanship, 'unbroken by any new, independent cause.' " Id.[6] (quoting Mich. Sugar Co. v. Emp'rs Mut. Liab. Ins. Co. of Wis., 107 Mich. App. 9, 14, 308 N.W.2d 684 (1981)). And the court limited the resulting loss clause to "later-in-time loss" that "flows from a non-foreseeable and non-excluded cause." Id.

But our Supreme Court has not restricted resulting loss clauses to independent, unforeseen covered perils. Vision One, 174 Wn.2d at 517; Sprague v. Safeco Ins. Co. of Am., 174 Wn.2d 524, 529, 276 P.3d 1270 (2012).

---

[6] Alterations in original.

8

And Farmers' concern about the resulting loss clause swallowing the exclusion does not bear out. The resulting loss clause only limits the scope of the exclusion. See Vision One, 174 Wn.2d at 517. In contrast, if we were to interpret a resulting loss clause to apply to only independent, unforeseen covered perils, the clause would be superfluous. The policy already covers unforeseen independent perils that it does not otherwise exclude. See GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 129, 135, 317 P.3d 1074 (2014) (we favor contract interpretation that does not render language meaningless or ineffective).

Finally, Farmers argues that even if Gardens' interpretation of the resulting loss clause is correct, this case is like Sprague, where the only damage for which Gardens seeks coverage is not an "**ensuing** loss" but "**the loss**" excluded by the policy. But Farmers misconstrues Sprague.

In that case, an all-risk homeowner's insurance policy excluded coverage for rot and defective construction but provided that " 'any ensuing loss not excluded is covered.' " Sprague, 174 Wn.2d at 527. The homeowners discovered rot damage to the fin walls of their deck due to construction defects and sought replacement coverage. Id. Insurance denied the claim. Id. On appeal, our Supreme Court reiterated that the purpose of a resulting loss provision "is to limit the scope of an exclusion from coverage," and that "losses caused by the excluded peril will be covered unless they are subject to their own specific exclusions." Id. at 529. The court determined that there was no coverage for the fin walls because the policy excluded both rot and defective workmanship. Id. at 530. That is, because the only loss resulted from rot caused

9

No. 83678-1-I/10

by construction defects (both excluded perils), there was no coverage under the resulting loss clause.  Id. at 530-31.  Here, the parties stipulated that the perils of condensation and excess humidity caused the roof damage, but they dispute whether Farmers' policy covers those perils.[7]

Because the trial court misinterpreted the resulting loss provision in Farmers' all-risk policy, we reverse and remand for further proceedings consistent with this opinion.[8]

_Brumm, J_

WE CONCUR:

_Birk, J._               _Andrus, C.J._

---

[7] The trial court did not reach the issue of whether water vapor and condensation are covered perils under Farmers' policy.

[8] Because we conclude the plain language of the policy mandates coverage if condensation is a covered peril, we do not address Gardens' alternative argument that the policy is ambiguous.

10